**Paula PICKETT, Libelant,**

v.

**NELSECO NAVIGATION COMPANY in lieu of STEAMSHIP BLOCK ISLAND, Her Engines, Boilers, etc., Respondent.**

Admiralty No. 4774.

United States District Court
D. Connecticut.

June 26, 1967.

Ira B. Grudberg, of Jacobs, Jacobs, Jacobs & Jacobs, New Haven, Conn., for libelant.

John C. Dennis and Robert P. Anderson, Jr., of Waller, Smith & Palmer, New London, Conn., for respondent.

TIMBERS, Chief Judge.

In this action founded on the admiralty and maritime jurisdiction of this Court, 28 U.S.C. § 1333, libelant sues to recover damages for personal injuries alleged to have been sustained September 2, 1963 (Labor Day) at approximately 6:30 p. m. when she claims to have tripped and fallen over a 2 to 3 inch wooden sill or coaming on the companionway leading to the ladies room on respondent's passenger vessel "M. V. Block Island", upon which libelant was a paying passenger en route from Block Island, Rhode Island, to New London, Connecticut.

ISSUE PRESENTED

After a two day trial at which both parties were ably represented by extraordinarily competent proctors, it appears that the critical issue dispositive of the case is whether libelant did in fact trip and fall over the sill or coaming as she claims; more specifically, whether there *was* such a sill or coaming located on respondent's vessel at the place she claims

to have tripped and fallen on the date in question.[1]

Having heard and considered the evidence and having studied the unusually helpful briefs of the parties, the Court finds that libelant has not sustained her burden of proving that she tripped and fell over the sill or coaming as she claims. The Court finds that there was no such sill or coaming on respondent's vessel at the place and time she claims to have tripped and fallen. Accordingly, the Court concludes that respondent is entitled to a decree dismissing the libel.

## FACTS

There is evidence from which the Court could find that libelant did in fact fall somewhere on respondent's vessel shortly before it reached New London on September 2, 1963; that X-rays taken the following day disclosed she had sustained an oblique fracture of the fifth metatarsal joint of her right foot; that she was treated by a physician for a period of six weeks; and that she was out of work as a waitress for the same period. Her claimed special damages total $746.

The fact that libelant was injured on respondent's vessel, however, of course does not establish liability on the part of respondent.

At the trial libelant's evidence fixed the location of her fall as a 3 foot, 6 inch passageway on the saloon deck on the starboard side; more particularly, a space under a pair of swinging doors in this passageway where a strip of linoleum had been inserted to match the adjoining linoleum in the passageway (Libelant's Ex. 8). Libelant's claim essentially is that the Court should infer, from the fact that this strip of linoleum

had been inserted, that on September 2, 1963 there was in its place a 2 to 3 inch wooden sill over which she tripped and fell, as her husband testified.

Respondent's evidence at the trial, on the other hand, established that the sill under the swinging doors had been removed in June 1961 as part of the renovations to the vessel incident to its being converted from steam to diesel power. Respondent's witness Wronowski testified that the sill in question had been removed at that time at his direction and while he was on the vessel; that the linoleum strip, taken from the portion of the deck removed in construction of a dance floor during the same renovations in June 1961, had been inserted in place of the sill at that time under his direction; and that no sill had been in that location thereafter.

Faced with this conflict in evidence as to the existence or non-existence of the sill in question at the place and time libelant claims to have tripped and fallen, the Court, applying the accepted tests of credibility,[2] credits respondent's evidence which it believes to be more persuasive and finds that libelant has not sustained her burden of proving that she tripped and fell over the sill in question, since it was not in existence on the day of the accident.

No useful purpose would be served by summarizing all of the conflicting evidence adduced by both sides. The Court has considered and weighed all of it. Two categories of evidence, however, are worthy of mention: one to illustrate the lack of persuasiveness of libelant's claim that she tripped and fell over the sill at the location specified, and the other to illustrate what the Court regards as

---

1. Libelant's proctor in his brief (p. 1) has stated the critical question as follows:
   "The crucial question for the court, we think, is a narrow one: Did the libelant fall by tripping over a 2 to 3 inch wooden doorsill stretching across a companionway on the respondent's boat Block Island? Even more narrowly, *was it there* on Labor Day, 1963 when plaintiff says she tripped over it?"

Respondent's proctors in their brief (p. 6) agree that this is the critical question.

2. See Locke Manufacturing Companies v. United States, 237 F.Supp. 80, 89 (D. Conn.1964); Lomartira v. American Automobile Insurance Company, 245 F.Supp. 124, 131 (D.Conn.1965), aff'd, 371 F.2d 550 (2 Cir. 1967).

the lack of sufficiency of the so-called Coast Guard evidence to permit a finding one way or the other.

*Sequence of Events by Which Libelant Fixed Location of Alleged Accident*

The following is a summary of the sequence of events regarding libelant's assertion of her claim and particularly her fixing of the location of the accident:

(1) On the day of the accident, September 2, 1963, libelant did not report her accident to any of the ship's personnel and of course did not specify to anyone connected with respondent the location of her fall. She did remark to a ticket-taker as she was disembarking that "You ought to have your raggedy boat fixed."

(2) In the spring of 1964, libelant's counsel wrote to respondent notifying it of libelant's accident but without specifying the location of her fall. This was the first word received by respondent of the accident.

(3) On August 28, 1964 this action was commenced by the filing of a libel, verified by libelant on August 19, 1964. The libel alleged that she was caused to trip and fall while she was "walking across the deck of said vessel", but without otherwise specifying the location of the accident.

(4) Not until May 16, 1966—32 months after the accident—did libelant specify the location of the accident as being in the passageway on the saloon deck at the location of the swinging doors where a strip of linoleum had been inserted. This was the first time libelant had been on the vessel since the day of the accident. She was accompanied by her husband and an investigator. The chief purpose of this May 16, 1966 visit to the vessel was to take photographs of the place where the accident occurred. On this occasion there was considerable vacillation on the part of libelant and her husband as to whether the accident occurred on the starboard or port side, on the after end or the forward end, and whether it occurred on Memorial Day or Labor Day.[3] The reasonable inference is that libelant and her husband seized upon the conspicuous patch of linoleum (where obviously there had been at one time a sill extending across the passageway) as fixing the location of her fall. For reasons indicated above, however, the Court is satisfied that this sill had been removed in June 1961 and was not in existence on September 2, 1963.

*Coast Guard Evidence*

The other category of evidence which should be briefly mentioned is that introduced through Lt. Commander Lyons of the Coast Guard. He testified generally with respect to the practice of requiring submission to the Coast Guard in advance of plans for renovations such as were made on the M. V. Block Island in 1960 and 1961; of inspections by the Coast Guard during the period the renovation work was being done; and of periodic inspections thereafter while the vessel was in service. Upon the critical issue of whether the sill over which libelant claims to have tripped and fallen was in place on September 2, 1963 (as libelant says it was) or whether it was removed in June 1961 during the renovation of the vessel (as respondent claims), the Court concludes that the Coast Guard evidence is insufficient to support a finding one way or the other, for the following reasons:

(1) Lt. Commander Lyons, the only witness from the Coast Guard who testified, had never been on the Block Island prior to August 1964.

3. The confusion between Memorial Day and Labor Day as the date of the accident is not significant in view of the un-disputed medical testimony that libelant was examined and treated on the day after Labor Day.

While he had made approximately 50 to 60 inspections since that date and testified that during the post-1964 period there was no sill at the place libelant claims to have fallen, of course that would not be conclusive as to the existence or non-existence of the sill on September 2, 1963.

(2) There was no evidence that the matter of removal of a sill such as the one here in question would have been indicated on plan‐ for renovation of the vessel submitted to the Coast Guard in advance or on records of inspections made by the Coast Guard during the renovation work. As respondent points out, the removal of a sill would have been a relatively insignificant matter in a renovation project the chief purpose of which was to change the propulsion system of the vessel from steam to diesel, with the consequent emphasis upon strengthening the hull and superstructure.

(3) No adverse inference should be drawn against respondent because of its failure to subpoena, or otherwise produce through the Coast Guard, records or other witnesses which conceivably might have established that the sill in question was removed during the 1960–1961 renovations of the vessel. Libelant's tardy specification of the location of her fall referred to above, together with libelant's further delay between May 16, 1966 and March 20, 1967 in furnishing to respondent photographs taken on the vessel on May 16, 1966 "so that [respondent] too may be aware of the specific area the alleged accident occurred",[4] precludes any adverse inference being drawn against respondent with respect to such evidence.

Finally, viewing the record as a whole, the Coast Guard evidence is by no means indispensable to making the finding required to be made by the Court as to whether there *was* a sill or coaming located on respondent's vessel at the place libelant claims to have tripped and fallen on the date in question. Respondent's evidence other than that adduced through Lt. Commander Lyons, and especially the testimony of the witness Wronowski, compared to the unpersuasive testimony of libelant's witnesses, has convinced the Court that the sill over which libelant claims to have tripped and fallen simply was not in existence on September 2, 1963. Libelant has failed to sustain her burden of proving that the accident occurred in the manner she claims.

## CONCLUSION

The Clerk is directed to enter a decree dismissing the libel, with costs to respondent.

The foregoing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52, Fed.R.Civ.P.

---

4. See Judge Clarie's pre-trial order of January 5, 1966, ¶ 4.