Phillip J. McNELLIS, as Trustee of Donald S. Potter, Bankrupt, Plaintiff-Appellant,

v.

MERCHANTS NATIONAL BANK AND TRUST COMPANY OF SYRACUSE, Syracuse, NEW YORK, and Manufacturers Hanover Trust Company, Defendants-Appellees.

No. 357, Docket 32033.

United States Court of Appeals Second Circuit.

Submitted Jan. 25, 1968.

Decided Feb. 16, 1968.

Laurence Sovik, Syracuse, N. Y. (Smith, Sovik, Terry, Kendrick, McAuliffe & Schwarzer, Syracuse, N. Y., on the brief), for plaintiff-appellant.

Roy L. Reardon, New York City (Simpson Thacher & Bartlett, Richard D. Katcher, New York City, on the brief), for appellee Manufacturers Hanover Trust Co.

Lawson Barnes, Syracuse, N. Y. (Melvin & Melvin, Syracuse, N. Y., on the brief), for appellee Merchants Nat. Bank & Trust Co. of Syracuse.

Before LUMBARD, Chief Judge, and SMITH and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge.

This is an appeal by plaintiff Phillip J. McNellis, as bankruptcy trustee of Donald S. Potter, from orders of the United States District Court for the Northern District of New York, granting a motion for summary judgment by defendants The Merchants National Bank and Trust Company of Syracuse and Manufacturers Hanover Trust Company. The matter was first before us a few months ago; at that time, we reluctantly concluded that the trustee could not then appeal because his claim had not yet been fully resolved. McNellis v. Merchants Nat'l Bank & Trust Co., 385 F.2d 916 (2d Cir. 1967). We suggested that if the parties could dispose of the remaining issues quickly, a new appeal could be submitted on the briefs already filed, together with whatever additional papers were necessary. This has been done; the previously undetermined claim of the trustee for $3,439.63 has been settled. The case has been referred to the panel that heard the original appeal, and we proceed to a determination of the merits.

For a statement of facts, we repeat substantially what was stated in our earlier opinion, 385 F.2d at 917–918. In the spring of 1963, Donald S. Potter, a real estate broker, filed a voluntary petition in bankruptcy; he was adjudicated bankrupt and Phillip J. McNellis was appointed trustee of the estate. Since then, McNellis has been attempting to recover moneys he claims Potter paid on allegedly usurious loans. E. g., In re Potter, 367 F.2d 513 (2d Cir. 1966); McNellis v. First Fed. Sav. & Loan Ass'n, 364 F.2d 251 (2d Cir.), cert. denied, 385 U.S. 970, 87 S.Ct. 504, 17 L.Ed.2d 434 (1966). In this case, the trustee's basic claim for relief is that Donald Potter paid interest on a loan by defendant banks in fact made to him although in form to a corporation named Potter Securities Corporation; in other words, the trustee alleges that the Corporation was a dummy for Donald Potter. The trustee's complaint contains two causes of action, both seeking recovery from the banks of allegedly usurious interest payments to them.[1] The first cause of action alleges two payments of interest on the loan at an annual rate of eight and one-half per cent: one of $62,526.67 for the period from January 1 to April 1, 1962, and the other of $53,446.35 for the period from April 1 to June 25, 1962. Pursuant to 12 U.S.C. § 86, the trustee seeks damages of double these amounts, or $231,946.04.[2] The second cause of action alleges that the two payments were fraudulent under sections 273–276 of the New York Debtor and Creditor Law, McKinney's Consol. Laws, c. 12, and that the later one also violated section 67d(2) of the Bankruptcy Act, 11 U.S.C. § 107(d) (2).

Both plaintiff and defendants moved for summary judgment in the district court before Judge Port. In his opinion, the judge found that:

The principal if not the sole use to which [the Corporation] was put was to hold title to various parcels of realty for relatively short times in order to borrow money, secured by mortgages, on that property.

---

1. The complaint is in form only against defendant Merchants, a national bank. However, supplemental pleadings made clear that Manufacturers participated in the loans to the extent of 93%; it has intervened as a party defendant.

2. 12 U.S.C. § 86 provides:

The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same: *Provided*, That such action is commenced within two years from the time the usurious transaction occurred.

Moreover, he recognized that:

> Many of these loans * * * were made at rates of interest which would have been usurious if charged to an individual borrower.

On the papers before him, the judge concluded that:

> The circumstances surrounding the execution of the May 3, 1961 building loan agreement inescapably lead to the conclusion that the loan was made to Potter Corporation and not to Donald Potter.

Judge Port found, therefore, that since under New York law the defense of usury is not available to a corporation, the building loan was not usurious; he dismissed the first cause of action.

As to the second cause of action, the judge held that insofar as it rested on the premise that the two payments were made without fair consideration because they were usurious, it must also fall. See In re Potter, 367 F.2d 513 (2d Cir. 1966). According to Judge Port, however, the second cause of action sets forth another theory: Even if the building loan was made to the Corporation, the payments of interest were actually made by Donald Potter individually; since he was under no personal obligation, the payments were transfers of his property without fair consideration. As to this, the judge held that, except for payments of $3,439.63, the papers before him offered "no support for the contention." As

already indicated, the trustee's sole remaining claim for $3,439.63 on the second cause of action has since been settled. An order of Judge Timbers [3] discontinued that portion of the trustee's action, and accordingly granted defendants' motion for summary judgment "in its entirety." Therefore, Judge Port's earlier order disposing of both causes of action is now squarely before us.

■■ As to the first cause of action, the trustee and the banks agree on the substance of the relevant law but not its application. The New York law of usury is controlling as to national bank Merchants because 12 U.S.C. § 85 so provides.[4] Under New York law, the maximum rate of interest that generally may be charged is six per cent per year. See N.Y. General Obligations Law, McKinney's Consol.Laws, c. 24–A, § 5–501. A specific statute regulating New York State banks has the same limitation. N.Y. Banking Law, McKinney's Consol. Laws, c. 2, § 108. Nevertheless, for many years corporations in New York have been barred from claiming usury. The General Obligations Law § 5–521 now provides: "No corporation shall hereafter interpose the defense of usury in any action. * * *"[5] Therefore, if the building loan here was to the Corporation, it cannot recover the payments of eight and one-half per cent interest as usurious; if the loan was to Donald Potter, his trustee can make such a

---

3. Sitting by designation in the Northern District of New York.

4. 12 U.S.C. § 85 states:

Any association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidences of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and no more, except that where by the laws of any State a

different rate is limited for banks organized under State laws, the rate so limited shall be allowed for associations organized or existing in any such State under this chapter. When no rate is fixed by the laws of the State, or Territory, or District, the bank may take, receive, reserve, or charge a rate not exceeding 7 per centum, or 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater * * *.

5. The identical predecessor to this section was N.Y. General Business Law, McKinney's Consol.Laws, c. 20, § 374.

claim.[6] Since Judge Port granted summary judgment on the first assumption, the precise issue before us is whether there were genuine issues as to any facts material to this determination.

Judge Port had a "mass of material" before him, including not only the motion papers but also transcripts of depositions and examinations of witnesses before the Referee in the bankruptcy proceedings. Among the facts that were undisputed, or that the judge emphasized in reaching his conclusion, are the following: The Corporation was formed in 1946, and since then its principal function has been to hold title from time to time to various parcels of real estate in order to borrow money, secured by mortgages, on such property; in 1960–1961, it negotiated with the defendant banks to provide interim financing for the construction of a motor hotel near Syracuse, New York; the banks required the Corporation to obtain permanent mortgage commitments in advance from other lenders for long-term financing, which the Corporation did (including a commitment for $2,390,000 from Columbia University); on April 17, 1961, Donald Potter conveyed the property in question by deed to the Corporation, and the latter contracted with two construction companies for the building of the motor hotel; on May 3, 1961, the Corporation entered into the building loan agreement and executed three notes and mortgages in connection therewith; every document relating to the loan was executed by Jackson M. Potter as president of the Corporation; at the time of the loan a title company certified title in the Corporation and the consent of the stockholders was filed; before each advance, the Corporation had to supply the lenders with an architect's certificate showing percentage of completion; and the building loan was replaced in June 1962 by permanent financing by another institutional lender. Appellant trustee stresses other matters in the record; e. g., the land that became

subject to the mortgage securing the loan was first purchased by Donald Potter; it thereafter was transferred back and forth a few times without consideration between the Corporation and Potter; the Corporation filed franchise tax returns for 1961 and 1962, which certified that during the times relevant here the Corporation was "inactive"; and in 1966, Merchants itself claimed, in another litigation brought against it by the trustee,[7] that during the period in question the Corporation was "the alter ego of Donald S. Potter or vice versa."

■ Were the law on the subject not so clear, these contrary factual indications might otherwise have dictated a denial of summary judgment to await trial. However, despite the looseness of transactions between Donald Potter, the Corporation and other related entities, the record documents and facts relied on by the judge seem sufficient under the controlling New York cases to warrant summary judgment. The leading decision is Jenkins v. Moyse, 254 N.Y. 319, 172 N.E. 521, 74 A.L.R. 205 (1930), relied on by Judge Port. In that case, plaintiff brought an action to cancel a mortgage given by a corporation on real property transferred to it by plaintiff; the basis of the action was that the mortgage secured a loan in actuality made to plaintiff at usurious rates. Plaintiff had originally sought to borrow individually, but acceded to a suggestion that he form the corporation to which the loan was made. Nevertheless, the New York Court of Appeals held, 254 N.Y. at 324–325, 172 N.E. at 522:

The test of whether this loan is usurious is whether it was in fact made to the plaintiff. Doubtless at times loans are made in fact to an individual though in form they are made to a corporation to hide the fact that the lender has exacted an illegal rate of interest from the real borrower. We do not now deal with such a situation.

6. As to the difficulties facing him even then, see In re Potter, 367 F.2d 513, 515–517 (2d Cir. 1966).

7. Defendants' Answer, Allegation 19, McNellis v. Melvin, Civ. No. 66–CV–55 (N. D.N.Y.).

Here the corporation was formed and the loan made to it, rather than to the individual who owned the corporate stock, because the parties sought to avail themselves of the rights the law accords to those who do business in corporate form under a franchise from the state. The fact that the sole owner of the stock of the corporation is an individual does not change those rights. He did not in his individual capacity borrow any money or agree to repay any money. The defendants have obtained a judgment against the corporation enforceable against property owned by the corporation at the time the action was brought. That judgment is based upon a valid contract.

More recently, and after Judge Port's decision below, the same court reaffirmed this doctrine in Leader v. Dinkler Management Corp., 20 N.Y.2d 393, 283 N.Y. S.2d 281, 230 N.E.2d 120 (1967). In that case, two businessmen had to borrow money for their personal use. Dinkler Management Corporation, the prospective lender, would make the loan only to a corporation and only at rates that apparently would otherwise be usurious. This was done, and after the loan was repaid, one of the borrowers sought return of the interest and other relief. The New York Court of Appeals, in affirming a judgment for the lender, stated, 20 N.Y.2d at 399–400, 283 N.Y.S.2d at 285, 230 N.E.2d at 123:

> Thus it is clear from *Jenkins* that a loan will not be struck down as usurious merely because the purpose of creating the corporation was to avoid the usury laws. * * * This rule has prevailed even where the corporation was a mere shell having no assets other than pledged security and where it transacted no business other than serving as a conduit for the transmission of the funds from the lender to the borrower. * * *

The real basis of these decisions has not been judicial blindness to reality but rather a response to it—a response which has in fact been impliedly sanctioned by the Legislature. Almost all of the cases in which we have sustained these loan agreements against charges of usury are cases in which the loans, though made to "dummy" corporations, were being used to further business ventures of the individuals who ultimately benefited from the transactions. Moreover, they involved circumstances, such as those present in our case, where it was, for some reason, inconvenient to merge the business venture with the corporation to whom the loan was made. Though in form the business venture and the "dummy" corporations were separate, in fact they were both part of the same enterprise, and the situation was similar to those in which a loan was made to a corporation actually transacting business. The results reached clearly conformed to the legislative policy of refusing to permit corporations—even though they be close corporations—to avoid obligations on which they had become bound. [Footnote omitted.]

Accord, Hoffman v. Lee Nashem Motors, Inc., 20 N.Y.2d 513, 285 N.Y.S.2d 68, 231 N.E.2d 765 (1967).

We regard these statements of New York's highest court as dispositive here. The Corporation may have been a device to provide financing at rates that would otherwise have been usurious; it may also have had little or no other business justification. But under the cases cited above, this is irrelevant so long as the loan was in form and in fact made to the Corporation. Moreover, that Donald Potter, as the trustee argues, may not have intended to relinquish ownership of the land he conveyed to the Corporation in April 1961 also seems irrelevant. See Werger v. Haines Corp., 94 N.Y.S.2d 691 (Sup.Ct.), aff'd per curiam, 277 App. Div. 1108, 101 N.Y.S.2d 361 (App.Div. 1st Dep't 1950), aff'd mem., 302 N.Y. 930, 100 N.E.2d 189 (1951). Accordingly, we hold that Judge Port was correct in ruling that the Corporation was the borrower on the building loan, that the usury laws were therefore inapplicable, and that the first cause of action should

244

be dismissed. Under these circumstances, it is not necessary to rule on the banks' argument that the trustee is collaterally estopped by the results of other decisions [8] from litigating the issue of whether the borrower was the Corporation or Donald Potter.

 As to the second cause of action, the summary judgment for defendants was also correct on the record as it now stands. As just indicated, the argument that the loan was usurious (and therefore payments of alleged interest were without fair consideration) is without merit. The alternative basis offered to show lack of fair consideration was that, even though the obligation belonged to the Corporation, Donald Potter individually made the payments. As to those payments still in dispute, Judge Port properly found that the evidence offered provided no factual basis for this argument.

Judgment affirmed.

8. E. g., McNellis v. Columbia University, Sup.Ct., Onondaga County (March 24, 1964), aff'd mem., 26 A.D.2d 761, 272 N.Y.S.2d 1022 (App.Div. 4th Dep't 1966); McNellis v. First Fed. Sav. & Loan Ass'n, Sup.Ct., Onondaga County (June 19, 1964), appeal dismissed, December 2, 1965.