Phillip J. McNELLIS, Trustee of Donald S. Potter and Jackson M. Potter, Bankrupts, Plaintiff,

v.

Isadore RAYMOND, Defendant.

Civ. No. 65–CV–63.

United States District Court
N. D. New York.

July 8, 1968.

Laurence Sovik and Laurence F. Sovik, of Smith, Sovik, Terry, Kendrick, McAuliffe & Schwarzer, Syracuse, N. Y., for plaintiff.

Dante M. Scaccia, of Love, Balducci & Scaccia, Syracuse, N. Y., for defendant.

TIMBERS, District Judge.*

## QUESTION PRESENTED

In this action brought pursuant to the N. Y. Debtor and Creditor Law §§ 271–

---

* Chief Judge of the District of Connecticut, sitting by designation.

273, 278 (McKinney 1945), the N.Y.Gen. Obligations Law § 5–513 (McKinney 1964), and Sections 67d(2) and 70e of the Bankruptcy Act, 11 U.S.C. §§ 107(d) (2), 110(e) (1964), the question presented is whether plaintiff trustee in bankruptcy may recover from defendant Raymond, a money lender, certain payments of principal and interest made to Raymond by the bankrupt, Donald S. Potter, in repayment of earlier loans from Raymond to Potter Securities Corporation, on the ground that such payments were made without consideration and therefore were transfers in fraud of the bankrupt's creditors.

After a six day trial at Syracuse, the Court holds that, Donald S. Potter having directly benefited from the loans, there was valuable consideration for his payments to Raymond and the transfers therefore were not fraudulent. Defendant is entitled to judgment dismissing the second cause of action alleged in the complaint—the only one pressed at the trial.

It appears, however, that plaintiff did not pursue at the trial his first cause of action, based upon the alleged usurious character of the loans, in reliance upon defendant's representation that his transactions were solely with Potter Securities Corporation and not with the bankrupt, Donald S. Potter, or Potter Real Estate Company, his sole proprietorship. Contrary to defendant's answers to certain of plaintiff's interrogatories, defendant produced at the trial checks drawn by him to the order of Donald S. Potter and Potter Real Estate Company. Since plaintiff's abandonment of his usury cause of action appears to have been induced by defendant's failure to disclose prior to trial that he had had such transactions with Donald S. Potter or Potter Real Estate Company, plaintiff is granted leave within 20 days from the date of this decision to move for trial upon his first cause of action, in which event the Clerk is directed to assign the first cause of action for a prompt trial.

The Court makes the following findings of fact and conclusions of law pursuant to Rule 52, Fed.R.Civ.P.

## FINDINGS OF FACT

(1) On May 28, 1963, Donald S. Potter, Jackson M. Potter and Potter Securities Corporation, having filed separate voluntary petitions in bankruptcy, were adjudicated bankrupts in this Court. The cases were referred to Honorable David J. Goldstein as referee. The referee on June 25, 1963 appointed Phillip J. McNellis as trustee in each case.

(2) During the period here involved—from January 1958 to the date of bankruptcy—Donald did business as a real estate broker under the name of Potter Real Estate Company, a sole proprietorship. Donald's father, Jackson, acted as real estate consultant and manager of finances of Potter Real Estate; not being a licensed real estate broker, Jackson did not engage in buying or selling real estate for others.

(3) Jackson also was president and treasurer of Potter Securities Corporation, a New York corporation; he owned 49 of its 50 shares of stock, the other share being owned by Arlene Hoppe, the secretary. Donald was neither an officer, director or shareholder of Potter Securities.

(4) Potter Securities was an "in and out corporation". It was a conduit for the transfer of securities and property to Potter Real Estate and Donald. The standard practice was to take title to real estate in the name of Potter Securities and then to transfer it to Potter Real Estate and sometimes to Donald. Donald's name appeared, on behalf of Potter Real Estate, on all bonds and mortgages and often as guarantor of notes, Potter Real Estate being a sole proprietorship. No money ever passed from Donald to Potter Securities when property was transferred from Potter Securities to Potter Real Estate or Donald.

(5) Potter Securities and Potter Real Estate both operated from the same office located in the Denison Building

in Syracuse. Jackson ran both enterprises, making all business decisions and representing the interests of both in borrowing money. The records of all Potter interests were kept by Potter Real Estate. All money obtained from the Potter enterprises was funneled into Potter Real Estate which had the only bank account in the Potter organization.

(6) The reasons for conducting the Potter real estate business in this manner, according to Jackson's testimony, were: (i) Jackson had no real estate broker's license, but Donald did; and (ii) a tax advantage was believed to accrue to Potter Real Estate because of tax losses carried forward.

(7) Raymond is a 77 year old money lender. He has had no formal schooling and claims he cannot read or write in any language; but he can sign his name and "can read figures." He has known Jackson for 20 years and has had business transactions with him for 15 years. Raymond claims that his transactions were exclusively with Jackson or Potter Securities—never with Donald or Potter Real Estate. Raymond knew, however, that Potter Real Estate had the only bank account in the Potter organization. Checks drawn to the order of Raymond, after being endorsed by him, frequently were deposited either by Jackson or Potter Securities in Raymond's bank account, reflecting Raymond's trust to that extent in Jackson and Potter Securities.

(8) Between January 10, 1958 and March 1, 1962, the proceeds of 294 checks totalling $582,637.90, drawn on the bank account of Potter Real Estate, were paid to and received for the benefit of Raymond in payment of the principal ($527,-205.78) and interest ($55,432.12) on loans Raymond had made to Potter Securities.

(9) During the entire period of the payments to Raymond referred to in paragraph (8), supra, Donald was insolvent.

(10) One or more creditors with provable claims against the bankrupt's estate were creditors of Donald during the period from January 1, 1958 to May 28, 1963.

(11) Donald received the full benefit of the loans made by Raymond to Potter Securities, referred to in paragraph (8), supra.

(12) Despite Raymond's contention throughout that he had dealt exclusively with Jackson or Potter Securities, never with Donald or Potter Real Estate, Raymond offered in evidence late in the trial certain checks drawn by him to the order of Donald S. Potter and Potter Real Estate. These checks and the information they disclosed were not produced pursuant to timely pre-trial disclosure demands by the trustee for the production of photostatic copies of all checks representing money loaned by Raymond to the Potter interests.

(13) Upon receipt of Raymond's answers to the trustee's interrogatories, the trustee abandoned his first cause of action based on usury and relied exclusively on his second cause of action that Donald's payments to Raymond were made without consideration and therefore were transfers in fraud of Donald's creditors.

(14) The trustee's abandonment of his usury cause of action having been induced by Raymond's failure to disclose what he was duty-bound to disclose, the trustee is entitled to his day in Court on his first cause of action.

## CONCLUSIONS OF LAW

(1) This Court has jurisdiction over the subject matter of, and the parties to, this action, pursuant to 28 U.S.C. § 1334 (1964) and Section 23 of the Bankruptcy Act, 11 U.S.C. § 46 (1964).

(2) The bankrupt, Donald S. Potter, having directly benefited from Raymond's loans to Potter Securities, there was valuable consideration for Donald's payments to Raymond.

(3) There is no proof that Donald's payments to Raymond were made with fraudulent intent.

(4) Fraud will not be presumed with respect to such payments under the

N.Y. Debtor and Creditor Law or the Bankruptcy Act.

(5) Donald's payments to Raymond were not transfers in fraud of creditors.

(6) Raymond is entitled to judgment dismissing the second cause of action alleged in the complaint.

(7) The trustee is entitled to a prompt trial on the first cause of action, provided he files a motion for such trial within 20 days from the date of this decision.

## OPINION

This is another in the series of cases in recent years which have been before this Court and the Court of Appeals for this Circuit[1] in which the trustee in bankruptcy, Phillip J. McNellis, has been attempting to recover moneys paid out by the bankrupt, Donald S. Potter, on allegedly usurious loans. The bankruptcy estate is now in its sixth year.

The trustee's basic claim in the instant action, similar to, but with noteworthy variations from, his claims made in other cases, is that Donald S. Potter, the bankrupt, made payments of interest and principal to Raymond on loans which Raymond had made to a corporation, Potter Securities Corporation.

The complaint alleges two causes of action. Each seeks recovery from Raymond of payments made to him by the bankrupt on account of principal and interest on allegedly usurious loans.

## I
## FRAUDULENT CONVEYANCE CLAIM (SECOND CAUSE OF ACTION)

The trustee's second cause of action (upon which this case was tried) alleges that Donald's payments to Raymond aggregating $582,637.90, in payment of interest and principal on loans made by Raymond to Potter Securities, were transfers while Donald was insolvent, without consideration and in fraud of creditors. Recovery is sought pursuant to the N.Y. Debtor and Creditor Law §§ 271–273, 278 (McKinney 1945), and Sections 67d(2) and 70e of the Bankruptcy Act, 11 U.S.C. §§ 107 (d) (2), 110(e) (1964).[2]

---

1. See McNellis v. Merchants National Bank & Trust Co. of Syracuse, 390 F.2d 239 (2 Cir. 1968); McNellis v. Merchants National Bank & Trust Co. of Syracuse, 385 F.2d 916 (2 Cir. 1967); In re Potter, 367 F.2d 513 (2 Cir. 1966); Mc-Nellis v. First Fed. Sav. & Loan Ass'n, 364 F.2d 251 (2 Cir.), cert. denied, 385 U.S. 970 (1966). Cf. Dubnoff v. Goldstein, 385 F.2d 717 (2 Cir. 1967); Mc-Nellis v. Dubnoff and Dubnoff v. Goldstein, 285 F.Supp. 563 (N.D.N.Y.1968).

2. Relevant provisions of the N.Y. Debtor and Creditor Law are as follows:
"§ 273. *Conveyances by insolvent*
Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."
"§ 271. *Insolvency*
1. A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."

"§ 272. *Fair consideration*
Fair consideration is given for property, or obligation,
a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, . . . ."
"§ 278. *Rights of creditors whose claims have matured*
1. Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,
a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
b. Disregard the conveyance and attach or levy execution upon the property conveyed.
2. A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property

The essential elements of the trustee's fraudulent conveyance claim alleged in the second cause of action are:

(1) That the bankrupt made *tranfers* to Raymond.

(2) That there were one or more *unpaid creditors* of the bankrupt in existence at the time of the transfers.

(3) That the bankrupt was *insolvent* at the time of the transfers.

(4) That the tranfers were made *without fair consideration*.

In addition, a threshold question is presented by the limitations defenses pleaded by Raymond.[3]

Each of these matters will be taken up, in reverse order. The Court holds for the trustee on the statute of limitations question and on essential elements (1), (2) and (3) of his cause of action; but the Court holds for Raymond on essential element (4).

*Statute of Limitations*

The action seeks recovery of payments reflected by 294 checks drawn by Potter Real Estate to Raymond, the first of which was drawn on January 10, 1958 and the last on March 1, 1962. The bankruptcy petition was filed May 28, 1963. The instant action was commenced February 8, 1965.

■ Under Section 11(e) of the Bankruptcy Act, 11 U.S.C. § 29(e) (1964), the trustee, within two years subsequent to the date of adjudication, may institute proceedings upon any claim against which the period of limitation fixed by federal or state law had not expired at the time the bankruptcy petition was filed. Cf. Herget v. Central National Bank & Trust Co., 324 U.S. 4 (1945). Where the bankruptcy is voluntary, as it was here, the date of adjudication is deemed to be the date of filing the petition. Section 18f of the Bankruptcy Act, 11 U.S.C. § 41 (f) (1964).

■ Under Section 67d(2) of the Bankruptcy Act, 11 U.S.C. § 107(d) (2) (1964), a transfer within one year of bankruptcy is fraudulent if made without fair consideration by an insolvent debtor. Since none of the payments here involved was made within one year of bankruptcy, the action may not be maintained under Section 67d(2).

■ Nevertheless, Section 70e of the Bankruptcy Act, 11 U.S.C. § 110(e) (1964), permits a trustee, as an alternative, to look to state law to set aside a transfer fraudulent as to a creditor of the bankrupt. United Towing Co. v. Phillips, 242 F.2d 627 (5 Cir. 1957); Field v. Lew, 184 F.Supp. 23, 26 (E.D. N.Y. 1960). The trustee thereby gains whatever advantages may be presented by that law over Section 67d(2), including avoidance of the one year limitations period. Stellwagen v. Clum, 245 U.S. 605 (1918); Blackford v. Commercial Credit Corp., 263 F.2d 97, 110 (5

---

or obligation as security for repayment."

Section 67d(2) of the Bankruptcy Act, 11 U.S.C. § 107(d)(2) (1964), provides:

"Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; . . . ."

Section 70e of the Bankruptcy Act, 11 U.S.C. § 110(e) (1964), provides:

"(1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor . . . ."

3. Raymond's answer pleads the one year period of limitation provided in Section 67d(2) of the Bankruptcy Act, 11 U.S.C. § 107(d) (2) (1964), which the Court holds bars an action thereunder. The answer also pleads the one year period of limitation provided in the N.Y. General Obligations Law § 5–513 (McKinney 1964), which the Court holds is not applicable to this cause of action.

Cir. 1959). The relevant New York law, N.Y. Debtor and Creditor Law §§ 273–276, 278 (McKinney 1945), simply carries with it a six year statute of limitations period, N.Y. CPLR § 213(6) (McKinney 1963). Since the earliest payment involved here was made on January 10, 1958, the six years had not expired as to any of the payments when the bankruptcy petition was filed on May 28, 1963. Therefore, this action which was commenced on February 8, 1965, within two years of the filing of the petition, is timely with respect to all claims made pursuant to Section 70e of the Bankruptcy Act, 11 U.S.C. § 110(e) (1964) and N.Y. Debtor and Creditor Law §§ 273–276, 278 (McKinney 1945).

*Fairness of Consideration*

■ Fairness of consideration is a question of fact. In order to determine whether the trustee has established as an essential element of his cause of action that there was a failure of consideration for the payments made by Donald to Raymond, an analysis of the evidence is necessary to ascertain the relationship between Donald (who made the payments), Raymond (to whom Donald made the payments) and Potter Securities (to whom Raymond had loaned the money which Donald repaid). Barr & Creelman Mill & Plumbing Supply Co. v. Zoller, 109 F.2d 924 (2 Cir. 1940); In re B-F Building Corporation, 312 F.2d 691, 694 (6 Cir. 1963); Mayo v. Pioneer Bank & Trust Co., 270 F.2d 823, 829 (5 Cir. 1959), cert. denied, 362 U.S. 962 (1960); Williams v. Twin City Co., 251 F.2d 678 (9 Cir. 1958).

The trustee's position essentially is that, although Raymond had no direct dealings with Donald, Raymond nevertheless received the proceeds from 294 checks drawn by Donald totalling $582,-637.90; therefore, the trustee argues, there could have been no consideration for Donald's repayment of loans which Raymond had made to Potter Securities.

Raymond's position on the other hand is that there was an identity of interest between Donald and Potter Securities, Donald being an agent for Potter Securities in receiving and disbursing funds; that Donald was a debtor of Potter Securities or a beneficiary of the transactions pursuant to which Potter Securities received the funds from Raymond and funneled them into Potter Real Estate which was Donald's sole proprietorship. The loans to Potter Securities, Raymond argues, gave Donald a new lease on his financial life, thus postponing the date of bankruptcy. Raymond further argues that repayment of a loan by a beneficiary, even though not legally obligated to do so, makes the repayment one for fair consideration and one that does not constitute a fraud on creditors.

■ There is substantial evidence which establishes an identity of interest between Potter Securities and Donald, and from which the inference is inescapable that Donald was not a volunteer in making the payments in question to Raymond.

Jackson, Donald, Potter Securities and Potter Real Estate constituted a single operation. Jackson was president, treasurer and principal shareholder of Potter Securities; he also was real estate consultant and manager of finances of Potter Real Estate; he made all business decisions and represented the interests of both entities in borrowing money. Assets of Potter Securities and Potter Real Estate were interchangeable; they were transferred from one entity to the other without consideration. It was a standard transaction for Potter Securities to buy property and then to transfer it to Potter Real Estate or to Donald, with no money or other consideration passing from transferee to transferor within the Potter enterprises. Jackson testified, with respect to the relationship between Donald and Potter Securities, "Well, I got to figure what is his is mine and what is mine is his. We didn't distinguish." Donald's bankruptcy petition (Exhibit 19) lists himself as the "Equitable owner of . . . realty, the title owner being Potter Securities Corp. . . . "

The books of Potter Real Estate reflect the loans from Raymond to Potter Securities and carried them as loans payable. Potter Real Estate records further disclose that the proceeds of checks drawn by Raymond were credited to Potter Real Estate, and that Raymond was the payee of checks drawn by Potter Real Estate.

Donald's repayment of loans to Raymond was at the direction of Jackson. Donald had the full benefit of Raymond's loans to the Potter complex. Jackson testified that the money ". . . we got from him went to the Potter Real Estate Corporation" (sic). Hence it is readily understandable that Donald should repay the loans from Raymond to Potter Securities.

The trustee has the burden of showing more than the bare fact that Donald paid a debt of Potter Securities; he must show that Donald's payments to Raymond constituted a misappropriation of Donald's funds, such as would arise from an absence of obligation by Donald to Potter Securities. Barr & Creelman Mill & Plumbing Co. v. Zoller, supra, at 926. But here there was such a "degree of identity and commingling of affairs" between Donald and Potter Securities that they cannot be regarded as separate entities insofar as Donald's obligation to repay the loans is concerned. Mayo v. Pioneer Bank & Trust Co., supra, at 830. The deposit of Raymond's money in Donald's bank account, all else aside, gives rise to an antecedent indebtedness on the part of Donald sufficient to satisfy the requirement of fair consideration. Id. at 829. Moreover, the indirect benefit Donald received in postponing the date of bankruptcy as a result of Raymond's loans would support a finding of fair consideration. Williams v. Twin City Co., supra, at 681.

The trustee vigorously argues that Raymond's contention—that his loans were not usurious because made in form to Potter Securities Corporation—is inconsistent with his contention that Donald received fair consideration for his repayment of the same loans. Such inconsistency, apparent at first blush, disappears upon analysis. For the form of the transaction may be controlling for one purpose, but not for another. Here, while the corporate veil may not be pierced in determining whether the loans were usurious, the corporation and the men behind may be recognized as one for the purpose of repayment.

Under New York law, as the Court of Appeals for this Circuit recently recognized in McNellis v. Merchants National Bank & Trust Co. of Syracuse, 390 F.2d 239, 242–43 (2 Cir. 1968), there is a vital distinction from the standpoint of the usury laws between loans made to individuals and loans made to corporations; the defense of usury is not available to corporations. In Jenkins v. Moyse, 254 N.Y. 319, 172 N.E. 521 (1930), the New York Court of Appeals, in affirming a judgment in favor of a defendant who had loaned money at usurious rates to a corporation all of whose stock was owned by an individual, in effect refused to look behind the form of a money-lending transaction to its substance; for purposes of the usury laws, the court held that if corporate formality were followed, it would not pierce the corporate veil to determine who was the real beneficiary of the loan. The doctrine of Jenkins v. Moyse recently has been reaffirmed in Leader v. Dinkler Management Corp., 20 N.Y.2d 393, 283 N.Y.S.2d 281, 230 N.E.2d 120 (1967). Accord, Hoffman v. Lee Nashem Motors, Inc., 20 N.Y.2d 513, 285 N.Y.S.2d 68, 231 N.E.2d 765 (1967).[4] The Court of Appeals for this

---

4. The New York cases from Jenkins to Leader strongly indicate that when a loan is made in form to a corporation, the defense of usury is not available. In Leader the court stated that ". . . Almost all of the cases in which we have sustained these loan agreements against charges of usury are cases in which the loans, though made to 'dummy' corporations, were being used to further business ventures of the individuals who ultimately benefited from the transactions." 20 N.Y.2d at 400, 283 N.Y.S.2d at 285, 230 N.E.2d at 123. The court noted that a

Circuit in McNellis v. Merchants National Bank & Trust Co. of Syracuse, supra, at 243, summarized the New York law announced in *Jenkins* and *Leader* as follows (referring to Potter Securities Corporation as "the Corporation"):

"We regard these statements of New York's highest court as dispositive here. The Corporation may have been a device to provide financing at rates that would otherwise have been usurious; it may also have had little or no other business justification. But under the cases cited above, this is irrelevant so long as the loan was in form and in fact made to the Corporation."

The claim of usury is not squarely at issue in the second cause of action of the instant case. Assuming without deciding, however, (a) that Raymond's loans to Potter Securities were made at usurious rates of interest and (b) that under New York law, since the loans were made in form to a corporation, their usurious character may not avail the trustee in seeking to recover repayments on account of such loans to Raymond as the money lender, the question here presented is whether the posture of such loans under the usury laws is inconsistent with Raymond's claim that the Court must disregard the corporate formality of the loans and determine whether Donald received fair consideration to support his repayments of the loans. The Court holds that there is no inconsistency in its determination that, despite the fact that the loans were in form made to the corporation, it may look behind the form to the substance in finding that Donald received fair consideration and thus was legally obligated to repay the loans.

To hold that loans to Potter Securities were not subject to the defense of usury even if Donald were the intended beneficiary, is not tantamount to holding that Donald had no obligation to repay the loans which inured to his benefit. Raymond's loans, although in form to Potter Securities, found their way into Donald's bank account by virtue of the identity of interest between Potter Securities and Donald. Raymond was entitled to be repaid. No one was more clearly indebted to Raymond than was Donald. Under these circumstances, to grant Donald an immunity from his obligation of repayment would make a mockery of the elemental duty owed by a debtor to a creditor. For purposes of repayment of the loans, the corporate formality adhered to in making the loans will be disregarded. There was fair consideration to support Donald's repayment of the loans to Raymond.

Moreover, such holding in disregarding the corporate entity for purposes of determining Donald's duty to repay the loans is not at war with the doctrine of refusing to pierce the corporate veil for purposes of applying the usury laws which reflect a "legislative policy of refusing to permit corporations—even though they be close corporations—to avoid obligations on which they had become bound." Leader v. Dinkler Management Corp., supra, 20 N.Y.2d at 400, 283 N.Y.S.2d at 286, 230 N.E.2d at 123. And "[t]he real basis of these decisions [referring to those from *Jenkins* to *Leader*] has not been judicial blindness to reality but rather a response to it—a response which has in fact been impliedly sanctioned by the Legislature." 20 N.Y.2d at 400, 283 N.Y.S.2d at 285, 230 N.E.2d at 123.

*Insolvency*

In view of the Court's holding that there was fair consideration for

---

loan will not be struck down as usurious ". . . even where the corporation was a mere shell having no assets other than pledged security and where it transacted no business other than serving as a conduit for the transmission of the funds from the lender to the borrower . . ." 20 N.Y.2d at 399–400, 283

N.Y.S.2d at 285, 230 N.E.2d at 123. The court further noted that in most of these cases, "Though in form the business venture and the 'dummy' corporations were separate, in fact they were both part of the same enterprise. . . ." 20 N.Y. 2d at 400, 283 N.Y.S.2d at 286, 230 N.E. 2d at 123.

Donald's payments to Raymond, it is not necessary for the Court to reach the issue of insolvency. Since considerable time at the trial was devoted to this issue and in view of the likelihood of eventual appellate review of the Court's decision herein, it does appear appropriate to make a finding on the issue of insolvency. The Court finds that Donald was insolvent during the entire period of the payments here in question from Donald to Raymond, i. e. from January 10, 1958 to March 1, 1962. See paragraph (9) of Findings of Fact, page 235, supra.

Since it is the trustee who seeks to recover in excess of a half million dollars paid by Donald to Raymond, the burden of proof upon the issue of insolvency is on the trustee. Commercial Trading Co. v. Potter Securities Corp., 26 A.D.2d 761, 271 N.Y.S.2d 733 (4th Dept. 1966). Here the trustee has adduced evidence of insolvency and has sustained his burden of proof.

The evidence introduced at the trial on the issue of insolvency consisted chiefly of (1) books and records of Potter Real Estate (Donald's sole proprietorship) for the period 1958–1963 kept under the supervision and control of Jackson and Donald, the entries actually having been made by bookkeepers employed by Potter Real Estate on the day of the transactions or within a few days thereafter; (2) balance sheets showing Donald's assets and liabilities for the years ending December 31, 1958 through December 31, 1962, prepared by Paul E. Roesgen, a C.P.A. and a partner in Lybrand, Ross Brothers & Montgomery, who was employed by the Referee in Bankruptcy to examine and analyze Donald's books and records; (3) Donald's federal income tax returns for the calendar years 1958–1962, testified to by Jackson as accurately reflecting Donald's

business transactions and certified by the accountants as conforming substantially to the books and records of Potter Real Estate; and (4) testimony of real estate experts called by both sides as to the fair salable value of properties owned by Donald during the years 1958–1962.

Based on the foregoing evidence, to the extent the Court finds it to be credible, on the issue of insolvency and applying the accepted standards for determining credibility,[5] the Court finds Donald to have been insolvent during the entire period from January 10, 1958 to March 1, 1962, as reflected by the following summaries of the evidence referred to above:

TABLE 1

LOSSES RECORDED IN BANKRUPT'S BOOKS FOR CALENDAR YEARS

| 1958 | - | $144,132.90 |
|---|---|---|
| 1959 | - | 251,658.72 |
| 1960 | - | 458,899.79 |
| 1961 | - | 701,922.35 |
| 1962 | - | 361,771.73 |

TABLE 2

LOSSES REPORTED ON BANKRUPT'S FEDERAL INCOME TAX RETURNS FOR CALENDAR YEARS

| 1958 | - | $131,465.13 |
|---|---|---|
| 1959 | - | 250,634.07 |
| 1960 | - | 434,328.84 |
| 1961 | - | 700,639.10 |
| 1962 | - | 379,320.73 |

TABLE 3

EXCESS OF LIABILITIES OVER ASSETS AS RECORDED IN BANKRUPT'S BOOKS AT END OF CALENDAR YEARS

| 1958 | - | $486,160.53 |
|---|---|---|
| 1959 | - | 817,089.03 |
| 1960 | - | 1,420,195.92 |
| 1961 | - | 2,616,149.98 |
| 1962 | - | 3,017,955.37 |

5. See Lomartira v. American Automobile Insurance Company, 245 F.Supp. 124, 131 (D.Conn.1965), aff'd, 371 F.2d 550 (2 Cir. 1967); United States v. Capaldo, 276 F.Supp. 986 (D.Conn.1967); Westchester Fire Insurance Company v. Tantalo, 273 F.Supp. 7 (D.Conn.1967); Rosner v. Modern Maid Packers, Inc., 274 F.Supp. 685 (D.Conn.1967); United States v. Feudale, 271 F.Supp. 115, 119 (D.Conn.1967); Pickett v. Nelseco Navigation Company, 270 F.Supp. 682, 683 (D.Conn.1967); Locke Manufacturing Companies v. United States, 237 F.Supp. 80, 89 (D.Conn.1964).

## TABLE 4

### EXCESS OF BANKRUPT'S LIABILITIES (PER BOOKS) OVER FAIR SALABLE VALUE OF BANKRUPT'S ASSETS (PER TESTIMONY OF REAL ESTATE EXPERT)

| End of Calendar Year | Fair Salable Value of Assets | Liabilities | Excess of Liabilities over Fair Salable Value of Assets |
|---|---|---|---|
| Dec 31, 1958 | $ 607,658.48 | $1,389,773.66 | $ 782,115.18 |
| Dec 31, 1959 | 1,515,922.98 | 2,309,506.45 | 793,583.47 |
| Dec 31, 1960 | 2,011,072.96 | 3,510,153.87 | 1,499,080.91 |
| Dec 31, 1961 | 4,345,870.35 | 6,803,628.72 | 2,457,758.37 |
| Dec 31, 1962 | 6,629,262.83 | 8,139,885.14 | 1,510,622.31 |

In short, the credible evidence at the trial was overwhelming in establishing Donald's insolvency during the period from January 10, 1958 to March 1, 1962.

### Existence Of One Or More Unpaid Creditors

■ An essential element of the trustee's second cause of action—that the bankrupt's payments to Raymond were transfers while Donald was insolvent, without consideration and in fraud of creditors—is that there is in existence at least one creditor with a provable claim against the bankrupt's estate who had an interest in Donald's property at the time of the payments. Section 70e of the Bankruptcy Act, 11 U.S.C. § 110 (e) (1964).

The parties stipulated at the trial that one or more creditors with provable claims against the bankrupt's estate were creditors of Donald during the period from January 1, 1958 to May 28, 1963. See paragraph (10) of Findings Of Fact, page 235, supra.

### Transfers By The Bankrupt

It is undisputed that the proceeds of the 294 checks attached to Exhibit 35 totalling $582,637.90, drawn on the bank account of Potter Real Estate between January 10, 1958 and March 1, 1962, were paid to and received for the benefit of Raymond in payment of principal and interest on loans Raymond had made to Potter Securities. See paragraph (8) of Findings of Fact, page 235, supra.

■ Each of these checks represents a transfer from the bankrupt to Raymond.

## II
### USURY CLAIM
### (FIRST CAUSE OF ACTION)

The trustee's first cause of action (not pursued at the trial) alleged that Donald's payments to Raymond aggregating $582,639.90, in payment of interest and principal on loans made by Raymond to Potter Securities, were null and void as against the trustee because the loans were usurious, having been made at rates of interest in excess of 6% per annum. Recovery was sought pursuant to the N.Y. Gen. Obligations Law § 5–513 (McKinney 1964), N.Y. Debtor and Creditor Law §§ 271–273, 278 (McKinney 1945), and Sections 67d(2) and 70e of the Bankruptcy Act, 11 U.S.C. §§ 107 (d)(2), 110(e) (1964).

Raymond's answer to the complaint alleged as a fourth affirmative defense [6]

6. Defendant's Fourth Affirmative Defense alleges:
 "That this defendant as far as he was informed and believed had no transactions as alleged in the complaint with the plaintiff bankrupt, Donald S. Potter, and that all transactions between this defendant during the time alleged in the com-

that he had had no transactions with the bankrupt, Donald S. Potter; that his transactions had been exclusively with Jackson and one or more corporations on whose behalf Jackson was acting; that Jackson handled the details of all such transactions; and that Raymond could neither read nor write. In short, as a defense to the trustee's cause of action for usury, Raymond claimed that in loaning money to the Potter interests he had dealt, through Jackson, exclusively with one or more corporations (the only actual corporation in the Potter complex being Potter Securities Corporation); and that he had never dealt with the bankrupt, Donald S. Potter.

The trustee thereupon propounded interrogatories to Raymond. Attached to the interrogatories were photostatic copies of the 294 checks reflecting the payments from Donald to Raymond which are the basis of the instant action by the trustee against Raymond. The interrogatories called for the following specific information with respect to each of the attached checks:

"1. Did you or anyone on your behalf receive Check No. (specify the check number) dated (specify the date of the check) payable in the sum of $ (specify the amount of the check).

2. Did you or anyone on your behalf either cash said check and apply the proceeds thereof for your use or benefit—or—deposit said check to your account or the account of anyone else for your use or benefit.

3. What was the purpose or consideration for the execution and delivery of said check to you.

4. If the purpose or consideration for the execution and delivery of said check was for the repayment of money

loaned or interest thereon, then answer the following interrogatories:

 a. By whom was the money loaned.
 b. To whom was the money loaned.
 c. When was the money loaned.
 d. What was the amount of the loan.
 e. How was the money loaned advanced—by cash or by check.
 f. If the money loaned was by check, furnish a photostatic copy of said check or make the same available to Plaintiff for inspection.
 g. If the money loaned was by cash and a receipt executed and delivered, furnish a photostatic copy of said receipt or make the same available for inspection."

Raymond's original answer to the trustee's interrogatories admitted that the proceeds of the 294 checks totalling $582,637.90, drawn on the bank account of Potter Real Estate, had been paid to and received for the benefit of Raymond. No disclosure was made, however, in response to Interrogatory 4b ("To whom was the money loaned"), that any of the loans had been made to the bankrupt, Donald S. Potter. Nor were photostatic copies of checks reflecting loans to Donald produced in response to Interrogatory 4f.

Raymond's supplemental answer to the trustee's interrogatories, still failing to disclose any loans by Raymond to Donald, read as follows:

"1. As to Interrogatory numbered '4a.', loans were made by Isadore Raymond.

2. As to Interrogatories numbered '4b.', '4c.', '4d.' and '4e.', defendant states that he does not know nor does he have reasonable means avail-

---

plaint were made with the plaintiff bankrupt, Jackson M. Potter, who was acting on behalf of one or more corporations, all of which transactions were made between the defendant and said corporations insofar as the defendant was informed and that all notes, checks, papers and writings of any kind made in connec-

tion with said transactions were prepared by the said Jackson M. Potter or one of the employees of said corporations and any such writings not prepared in accordance with the agreed transaction were a fraud perpetrated on this defendant. That the defendant can neither read nor write."

able of ascertaining the information requested."

The trustee brought several motions seeking to compel Raymond to serve and file responsive answers to the trustee's interrogatories. Eventually, Judge Port ruled, in response to the trustee's claim that Raymond's answers were evasive, incomplete and not made in good faith, that Raymond would be bound by his answers to the trustee's interrogatories.

The trustee filed a supplemental complaint which in effect abandoned his first cause of action based on his claim of usury. The supplemental complaint set forth Raymond's fourth affirmative defense, supra note 6, in which he alleged that he had had no transactions with Donald, only with Jackson acting for one or more corporations; referred to Raymond's admission that he had received the proceeds of checks totalling $582,637.90 drawn on the bank account of Potter Real Estate, Donald's sole proprietorship; and accordingly charged that such payments to Raymond, having been made without consideration while Donald was insolvent, were transfers in fraud of Donald's creditors. Thus, the trustee realleged and pressed his fraudulent conveyance claim set forth as the second cause of action in his original complaint, but abandoned his usury claim which had been alleged as the first cause of action.

It appears that the trustee's abandonment of his usury cause of action was induced by Raymond's failure to disclose, in response to timely pre-trial disclosure demands by the trustee, that he had loaned money to Donald or Potter Real Estate. At the trial, as part of defendant's case, Raymond produced and offered in evidence 31 checks, totalling $170,033.04, drawn by him to the order of Donald S. Potter, and some 17 checks, totalling $98,100, drawn by him to the order of Potter Real Estate. Such checks, on their face at least, are inconsistent with Raymond's representations throughout the case, including his fourth affirmative defense and his disclosures in response to the trustee's interrogatories, that he had dealt exclusively with Jackson and Potter Securities, never with Donald or Potter Real Estate.[7] In abandoning his usury cause of action in reliance on these representations, the trustee undoubtedly had in mind that under New York law there is a vital distinction from the standpoint of the usury laws between loans made to individuals and loans made to corporations, the defense of usury not being available to corporations. Indeed, the Court of Appeals for this Circuit specifically recognized that distinction as between loans made to Donald S. Potter and loans made to Potter Securities Corporation in McNellis v. Merchants National Bank & Trust Co. of Syracuse, 390 F.2d 239, 242–43 (2 Cir. 1968).

Raymond's failure to produce prior to trial checks indicating at least $268,133.04 of loans by Raymond to Donald and Potter Real Estate cannot be excused by Raymond's alleged illiteracy. He has been represented by able and astute counsel throughout this case.

 In granting the trustee an opportunity for his day in Court on his usury cause of action, in view of Raymond's failure to disclose prior to trial what he was duty-bound to disclose, the Court wishes to emphasize that it is expressing no opinion whatever on the merits of such claim. The problems confronting the trustee in proving such a usury claim are well known to counsel. See, e. g., In re Potter, 367 F.2d 513 (2

---

7. Raymond himself testified at the trial, in response to his own attorney's questions on direct examination:
"Q. Did you ever have any business dealings with Donald Potter?
A. Never.
Q. Particularly between '58 and '62 did you have any?

A. No."
Moreover, on the second day of the trial, Raymond's counsel stipulated that "There were no transactions whatever of any nature between the defendant Raymond and the bankrupt, Donald S. Potter."

Cir. 1966), and particularly Judge Feinberg's observations at 516–17. Nevertheless, whether the trustee, acting upon the advice of counsel, as a practical matter wishes to pursue or abandon his usury cause of action is for *him* to determine in the exercise of his business and fiduciary judgment. All this Court holds, in the exercise of its inherent equitable powers,[8] is that the trustee is entitled to make that determination in the light of the information withheld from him by Raymond prior to trial and which Raymond was duty-bound to disclose.

■ The Court, having considered *sua sponte* whether it should direct the entry of a final judgment at this stage of the case dismissing the second cause of action, has decided that a Rule 54(b) certification would not be appropriate in this case at this time. See McNellis v. Merchants National Bank & Trust Co. of Syracuse, 385 F.2d 916, 918–19 (2 Cir. 1967).

Finally, both sides have filed motions to strike evidence, including renewal of motions made at the trial and motions which they were granted leave to file subsequent to trial. The Court, having carefully considered all such motions, denies the motions insofar as they are directed at evidence which supports the Court's findings of fact and conclusions of law made herein pursuant to Rule 52, Fed.R.Civ.P.; in all other respects, the motions are dismissed as moot.

### ORDER

ORDERED as follows:

(1) That defendant is entitled to judgment dismissing the second cause of action alleged in the complaint.

(2) That plaintiff is granted leave, within 20 days from the date of this decision, to move for trial upon the first cause of action alleged in the complaint.

(3) That the Clerk is directed, in the event plaintiff files a timely motion for trial on the first cause of action as provided in paragraph (2) above, to assign the first cause of action for as prompt a trial as the available judicial manpower in the Northern District of New York permits.

(4) That the Clerk is directed, in the event plaintiff does not move for trial on the first cause of action as provided in paragraph (2) above, to enter final judgment in favor of defendant dismissing the complaint, with costs.

(5) That all motions to strike evidence, insofar as they are directed at evidence which supports the Court's findings of fact and conclusions of law herein, are denied; in all other respects the motions to strike are dismissed as moot.

8. Section 23 of the Bankruptcy Act, 11 U.S.C. § 46 (1964). Compare Rules 60(b) and 37(d), Fed.R.Civ.P.