COUNTRY MOTORS, INC., Respondent, v. FRIENDLY FINANCE CORPORATION, Appellant.*

*April 4—May 2, 1961.*

* Motion for rehearing denied, with $25 costs, on June 27, 1961.

For the appellant there was a brief by *Cavanagh, Mittelstaed, Sheldon, Heide & Hartley* of Kenosha, and oral argument by *William A. Sheldon.*

For the respondent there was a brief by *Dougherty, Campbell, Brennan & Steil* of Janesville, and oral argument by *Glen R. Campbell* and *William H. Dougherty.*

FAIRCHILD, J.   Sec. 115.05, Stats., forbids the receipt by anyone of more than 10 per cent per year for a loan of money. Sec. 115.06 provides that contracts reserving a greater rate shall be valid to secure the repayment of the principal sum loaned but no interest shall be recovered (except upon bottomry and respondentia bonds and contracts), "and no corporation shall interpose the defense of usury." Sec. 115.07 (1) authorizes one who has paid ex-

cessive interest to recover treble the amount paid in excess of the allowed rate in an action brought within one year after payment. Sec. 115.07 (2) makes the charging of more than 10 per cent interest a misdemeanor.

Every "person" who has paid more 'for a loan than the allowable rate may recover under sec. 115.07 (1), Stats. The word "person" in our statutes includes a corporation unless such construction would produce a result inconsistent with the manifest intent of the legislature.[1] Looking solely at sec. 115.07 (1), it would appear that a corporate borrower could recover to the same extent that others could. The question arises because of the implications of the clause in sec. 115.06, "and no corporation shall interpose the defense of usury." This clause will be referred to as the "corporation clause."

Nothing in sec. 115.05, Stats., suggests that its prohibition against receipt of more than 10 per cent per year does not apply to interest received from a corporation. The substance of this section, except for the rate prescribed, originated in sec. 2, ch. 172, Laws of 1851. Sec. 115.07 (1), authorizing recovery of treble the interest paid above the allowable rate, originated in sec. 3 of the same chapter. If the words therein, "by himself or his personal representative," referring to the person who has paid excessive interest, suggest that a corporation is not the type of "person" authorized to recover interest paid, the very similar words "his personal representatives" referring to the recipient of excessive interest would suggest the very unlikly proposition that no recovery could be had from a corporate lender. Sec. 115.07 (2) prescribes a criminal penalty, and expresses no distinction between charging more than 10 per cent per year when the borrower is a corporation and doing it when the borrower is not. This

---

[1] Sec. 990.01 (26), Stats.

provision appears to have had its origin in ch. 412, Laws of 1907.

Sec. 115.06, Stats., prescribes the effect to be given to a contract where an excessive rate is reserved. The statutory policy in this respect was unsettled during the early years of statehood. Ch. 172, Laws of 1851, made all such contracts void. Ch. 55, Laws of 1856, made them valid for recovery of the sum actually loaned. Ch. 160, Laws of 1859, again declared them void, but ch. 93, Laws of 1871, again made them valid to secure the repayment of the principal sum loaned, and this policy has remained in effect. The present language of sec. 115.06 appeared as sec. 1690 of the Revised Statutes of 1878. The Revisor's notes do not explain the addition of the corporation clause. The question presented is whether the corporation clause pervades the meaning of secs. 115.05 and 115.07, or whether it is restricted in its effect to sec. 115.06.

Counsel for Country Motors urge that the clause be construed narrowly. As we understand their position, it is that the receipt of interest at a rate greater than 10 per cent per year from a corporate borrower is made just as much a wrong by sec. 115.05, Stats., as the receipt of the same interest from a noncorporate borrower, and the civil penalty of a treble-damage action provided by sec. 115.07 (1), and presumably also the criminal penalty in sec. 115.07 (2), would apply regardless of whether the payor of the interest is a corporation or not. According to their view, the only difference between a contract by a borrowing corporation to pay more than 10 per cent per year interest and a similar contract by one not a corporation would be that on such a contract a lender may recover only the principal sum from a noncorporate borrower, but may recover the principal sum plus interest at 10 per cent per year (although not the full agreed rate) from a corporate borrower.

Reference was made to the corporation clause in *Feest v. Hillcrest Cemetery, Inc.*[2] as follows:

"The answers filed alleged that the contract sued upon is usurious, because by its terms it exacts more than 10 per cent interest as condition of releasing lots from the contract or reconveyance of all the lots if demanded before due date. This claim is not tenable if for no other reason because a corporation cannot assert the defense of usury. Sec. 115.06, Stats."

Evidently there was no thought that a corporation could have defended to the extent that the agreed interest exceeded the rate allowed by statute.

We note also that sec. 180.04 (7), Stats., grants a corporation the power "to borrow money at such rates of interest as the corporation may determine." This power is qualified, however, as follows: "When no inconsistent provision is made by law" and the question before us is whether secs. 115.05 and 115.06 are inconsistent provisions.

The argument made on behalf of Country Motors would permit a borrowing corporation to interpose the defense of usury in part, *i.e.*, against payment of the portion of the agreed rate in excess of the maximum statutory rate. It seems to us, however, that the "defense of usury" embraces the proposition that the contract is not to be enforced according to its terms because it calls for interest in excess of the statutory maximum rate, and that the corporation clause must logically mean that a corporation is forbidden to assert that proposition when an action is brought to enforce the contract. If that proposition cannot be asserted, it would then logically follow that the contract will be enforced according to its terms. It would then seem absurd to permit a lender to collect principal and agreed interest from a corporation, but to permit the corporation to recover from the lender

---

[2] (1945), 247 Wis. 160, 165, 19 N. W. (2d) 246.

three times the amount by which the interest exceeded the statutory rate. While the words of the clause speak only of denying a defense, we conclude that they imply the denial of an affirmative right of action based upon the same facts.

It appears that most courts which have dealt with a statutory provision of this type have reached a conclusion consistent with the one just stated, although there is a considerable variation in the form and effect of statutes concerning usury.[3]

Our opinion is further confirmed by the fact that the clause in question was apparently adopted by Wisconsin from New York, and that prior to adoption this court had on two occasions noted the interpretations of the clause in question by the highest court of New York.

" 'It is a settled rule in the construction of statutes, that where a statute has received a judicial construction in another state, and is then adopted, it is taken with the construction which has been so given to it.' "[4]

In 1850, New York inserted virtually the same clause in its usury law.[5] The clause could not have exactly the same effect when imported into the 1878 Wisconsin statutes since our statute permitted recovery of the principal amount upon a usurious contract, whereas the New York statute declared the contract void. Thus, the defense of usury in New York was a defense against the entire obligation of both principal and interest, whereas the defense in Wisconsin was a defense only against the payment of interest. There were

[3] See Anno. Usury—Defense by Corporation, 63 A. L. R. (2d) 924, and 55 Am. Jur., Usury, p. 395, sec. 104.

[4] *Draper v. Emerson* (1867), 22 Wis. 142 (*147), 144 (*150); *Estate of Sweet* (1955), 270 Wis. 256, 258, 70 N. W. (2d) 645.

[5] "No corporation shall hereafter interpose the defense of usury in any action." Ch. 172, sec. 1, N. Y. Laws of 1850; 3 Rev. Stats. of N. Y. (1858), p. 75, sec. 19.

also other differences between the statutes. Ours allowed a maximum rate of 10 per cent per year, whereas New York allowed only seven per cent. Our statutes authorized recovery of treble the excess paid, whereas New York allowed recovery only of the exact amount. Notwithstanding these differences, the pronouncements of the New York court as to the breadth of the interpretation of the clause are of great, if not controlling, significance.

In 1857, the New York court of appeals decided *Curtis v. Leavitt*.[6] Certain bonds were held to be English contracts and not usurious by English law, but the court also stated that if the bonds were usurious, the receiver of the issuing corporation was prohibited from setting up the usury. Apparently seven judges participated, and five wrote opinions. Judge COMSTOCK said, with reference to the clause adopted in 1850, at page 85: "My impression is that the act must be construed as a repeal of the statutes of usury as to all contracts of corporations stipulating to pay interest, thus leaving the contracts in full force according to their terms, and that such an act is liable to no constitutional objection."

Judge BROWN said, at page 154: "The effect of the act of the 6th April, 1850, is to repeal the statute of usury so far as it applies to corporations. The condition of this class of beings becomes the same as if the usury laws never existed."

Judge PAIGE said, at page 229: "The act of 1850 is in substance a repeal of the statutes of usury, so far as relates to corporations."

Judge SELDEN said, at page 255: "Its intention obviously was to take away altogether from corporations the defense of usury."

In 1858, the New York court of appeals decided *Southern Life Ins. & Trust Co. v. Packer and Prentice*.[7] There it was

---

[6] (1857), 15 N. Y. 9.
[7] (1858), 17 N. Y. 51, 52.

decided that the clause was retrospective in operation and applied to foreign corporations in actions in the courts of New York. Reference was made to *Curtis v. Leavitt, supra.* "Four of the judges, in their opinions, discuss the question at considerable length; and, upon the final decision of the cause, a resolution was passed, by a unanimous vote, in effect that a corporation could not, under the act of 1850, set up usury in any way to defeat a contract otherwise valid."

In 1861, *Butterworth v. O'Brien,*[8] was decided. The New York court held that a corporation was deprived of the right to recover back money paid in excess of legal interest. Two opinions were written and all the judges concurred in the result, although it appears that neither opinion can be considered in all respects the opinion of the court. Judge DAVIES said, at page 279: "It was obviously the meaning and intent of the legislature to take away from corporations altogether all benefit or advantage resulting from the statute of usury. As to them, it was as though it never had existence as a law. It was not thereafter to be used or taken advantage of by them, either as a weapon of attack or as a shield for defense."

Judge JAMES, while indicating that corporations were not persons within the meaning of the term used in authorizing recovery of the excess paid in a usurious transaction, also said, with reference to the 1850 statute, at page 281: "Its legitimate effect was to repeal the existing usury laws of this state as to corporations."

In 1862, the Wisconsin court considered whether a contract by a corporation would be valid if it were governed by New York law, and said at page 140 (*135):

"The act of New York, Laws of 1850, ch. 172, that 'no corporation shall hereafter interpose the defense of usury,' repeals the usury law of that state as to corporations. Such is the opinion of the court of that state, and we do not differ

---

[8] 23 N. Y. 275.

with them. Per COMSTOCK, BROWN, PAIGE, and SELDEN, JJ., in *Curtis v. Leavitt,* 15 N. Y. 85, 151, 228, and 255; and *Insurance Co. v. Packer,* 17 N. Y. 51." [9]

In 1863, this court considered a similar situation in *Lyon. v. Ewings.* [10] *Curtis v. Leavitt, supra,* footnote 6, and *Butterworth v. O'Brien, supra,* footnote 8, were both cited to the proposition that by New York law a corporation was prohibited from interposing the defense of usury in any action.

The highest court of New York having construed the clause so broadly, and this court having expressly recognized that construction of the language, it is highly probable that those who drafted the 1878 revision were aware of such construction.

Counsel for Country Motors rely, as did the circuit court, upon two decisions of the supreme court of Illinois. The first was *Union Nat. Bank v. Louisville, N. A. & C. R. Co.* [11] In that case, a national bank made a loan to an Illinois corporation upon an arrangement under which the bank would receive interest in excess of the maximum rate allowed by the statutes of Illinois. The Illinois statute also provided that no corporation shall interpose the defense of usury. A United States statute forbade a national bank from charging interest in excess of the rate allowed by state law. The court held that the provision of Illinois law which prevented a corporation from interposing the defense of usury did not except corporate borrowing from the Illinois usury law for all purposes. The Illinois statute retained sufficient efficacy as to a corporate borrower so that the corporation could establish a defense under the federal statute.

---

[9] *Ballston Spa Bank v. Marine Bank* (1862), 16 Wis. 125 (*120).

[10] 17 Wis. 63 (*61), 71 (*69).

[11] (1893), 145 Ill. 208, 34 N. E. 135.

Later, this decision was interpreted in *Dorothy v. Commonwealth Commercial Co.*[12] as follows:

"We there held that while a corporation cannot, on account of said section 11, insist upon the forfeiture of all interest, as provided by section 6 of the Interest Act, where the debtor has contracted to pay usurious interest, yet said section 11 does not prevent the debtor corporation from insisting that only interest at the legal rate shall be allowed in determining the amount due the creditor."

Following this latter decision, the Illinois legislature amended the statutes so as to provide that the rates at which corporations may borrow money are not restricted by the usury laws.

We do not follow the reasoning in the two Illinois decisions cited. As previously stated, where a statute prevents a corporation from pleading that a contract to pay a rate of interest in excess of the statutory rate is usurious, it seems the logical interpretation that the contract may be enforced according to its terms.

It will be noted from the annotation previously referred to, *supra,* footnote 3, that there are a number of other questions arising under the corporate clause, such as whether a guarantor of a corporate debt may interpose the defense of usury and the like. Those questions, of course, are not presented by this record and are not decided.

*Constitutionality.* Counsel for Country Motors argue that a constitutional question arises if a corporation be denied the same right as an individual to recover treble the amount of interest paid above the rate allowed by statute. But if this treatment with respect to recovery of treble damages raises a question under the Fourteenth amendment, the identical question was raised by the enactment of the corporation clause. It is conceded that it differentiates between corpora-

---

[12] (1917), 278 Ill. 629, 654, 116 N. E. 143, 151.

tions and others with respect to defense against usurious contracts.

The corporation clause has been held valid elsewhere.[13] Doubtless, the legislature considered that individuals and partnerships were generally more likely than corporations to yield to the pressures of necessity and agree to unwarranted rates of interest, and that corporations generally when borrowing would have bargaining power more nearly equal to that of lenders. The increased use of corporate organization for very small businesses in the present day may make the generalization less of a certainty than the legislature supposed it to be in 1878, but "the classification made by the legislature is presumed to be valid unless the court can say that no state of facts can reasonably be conceived that would sustain it."[14]

"For many purposes corporations may be put into one classification and individuals into another without violating constitutional guaranties of equality."[15]

*By the Court.*—Judgment reversed, with directions to dismiss the complaint with costs.

[13] 55 Am. Jur., Usury, p. 395, sec. 104; Anno. Usury—Defense by Corporation, 63 A. L. R. (2d) 924, 929.

[14] *State v. Neveau* (1941), 237 Wis. 85, 99, 294 N. W. 796, 296 N. W. 622.

[15] 12 Am. Jur., Constitutional Law, p. 199, sec. 513.