Keating, J.
 

 The plaintiff in this action, I. Theodore Leader, and the defendant Joseph Durst were the promoters and controlling stockholders of the Leader-Durst Corporation. The corporation was organized in December, 1961. Shortly thereafter the Leader-Durst Corporation made a public offering of a large block of its Class A stock at a price of $5.00 per share. In order to insure compliance with the registration statement filed with the Securities and Exchange Commission, Leader and Durst found it necessary to acquire personally 80,000 shares of the corporation’s Class A stock. Finding themselves without the necessary funds with which to make the purchase, Leader and Durst sought to borrow $400,000 from the Dinkier Management Corporation (herein called Dinkier).
 

 An agreement to this effect was negotiated by the defendant Durst and Dinkier. Dinkier agreed to the loan, but only if it were made to a corporation, and, for this purpose, Leader and Durst formed the Leatex Investing Corporation on May 8, 1962. The authorized capital of Leatex consisted of 200 shares of common stock, of which 50 shares were issued to Leader and Durst respectively. The remaining shares were not issued. Durst was elected president and Leader vice-president of the corporation. Leatex opened a bank account at the Manufacturers Hanover Trust Company.
 

 On May 9, 1962 Dinkier agreed to lend Leatex the sum of $400,000. The agreement provided that the loan would be closed the following day. On May 10, 1962, Dinkier delivered a check for $400,000 payable to Leatex. In return Dinkier received a
 
 *397
 
 note from Leatex for $480,000 payable on November 10, 1962. Both Leader and Durst were listed as guarantors of the note. Some 160,000 shares of the Leader-Durst Corporation’s Class A stock were pledged as security for the loan. Of these 80,000 were pledged by Leatex and 80,000 by Leader and Durst. Leatex had purchased its 80,000 shares with the proceeds of the loan agreement.
 

 The execution of the loan agreement was approved and ratified at a special meeting of the shareholders of Leatex. At the closing of the deal there was delivered to Dinkier a certified copy of the resolutions of approval, along with an opinion letter from counsel for Leatex and the two shareholders, stating that the corporation had the authority to borrow the $400,000 and that the note and collateral security given to secure the loan were valid and legally binding.
 

 In addition to the afore-mentioned agreements, Leader and Durst agreed to grant Dinkier an irrevocable option exercisable on or before December 31, 1964 to purchase 16,000 shares of Class B (voting) stock of the Leader-Durst Corporation at 25 cents per share.
 

 The loan was repaid in several installments. In the course of the payments, the lender agreed to a reduction in the interest charged from $80,000 to $55,000, and, therefore, the total sum repaid was $455,000. After the loan was repaid, Dinkier gave notice of its intention to exercise its option under the loan agreement to purchase 16,000 shares of the Class B (voting) stock.
 

 The plaintiff, concerned that the exercise of the stock option might result in the .seizure of control of the corporation by Dinkier and Durst, entered into negotiations with Dinkier. These negotiations resulted in an agreement by which Dinkier agreed to give up its option to purchase the Class B stock in return for 6,667 shares of Class A stock valued at $4.00 per share and a general release of all claims including the one based upon usury.
 

 Six months later Leader commenced an action, under section 5-513 of the General Obligations Law, for the return of interest paid in excess of 6% and for a return of the 6,667 shares of Class A stock. The plaintiff claimed that the release was entered into as a result of “ economic duress ” and was, therefore, not enforcible.
 

 
 *398
 
 Some two years after the commencement of the action and after pretrial testimony had been taken, Dinkier moved for summary judgment. The relief, denied by Special Term on the ground that the motion was not timely made, was granted by a unanimous Appellate Division (Second Department).
 

 The Appellate Division held that ‘ ‘ In our opinion, there is no showing that the loan made to a corporation and guaranteed by plaintiff and defendant Durst was in fact made to plaintiff and Durst individually, though in form to the corporation, to hide the fact that appellant [respondent here] exacted an illegal rate of interest. The loan was not an illegal, usurious loan and the interest paid may not be recovered as usurious interest
 
 (Jenkins
 
 v.
 
 Moyse,
 
 254 N. Y. 319;
 
 Werger
 
 v.
 
 Haines Corp.,
 
 277 App. Div. 1108, affd. 302 N. Y. 930).”
 

 In addition, the court found that the six-month delay in the date on which the release had been entered into waived any alleged claim of economic duress.
 

 Setting aside for a moment the question of the enforcibility of the release, the first question to be considered is the contention that “ [t]he loan was made by respondent to appellant and defendant Durst, individually, though in form to a corporation in order to hide the fact that respondent exacted an illegal rate of interest ”. It is urged by the plaintiff that triable issues' exist which bar the grant of summary judgment.
 

 After reviewing the affidavits and applicable law in this area and accepting as true the allegations contained in the plaintiff’s complaint, affidavits and testimony before trial, we reach the conclusion that there were no triable issues and that summary judgment was properly granted.
 
 [1]
 

 The appellant asserts that the purpose of the loan was to further the individual interest of the appellant and defendant Durst — the individual shareholders; that the loan was made to a corporation whose certificate was filed on the day preceding the loan agreement and which was organized for the specific purpose of avoiding the usury laws; and that Leatex was simply a shell corporation that had neither assets nor business of any kind. In addition, it appears from allegations in the complaint
 
 *399
 
 that some $130,000 of the $455,000 was paid directly to Dinkier by the individual shareholders. Although the remainder appears to have been paid by Leatex, there is little question that the funds for the repayment came from the individual .shareholders.
 

 One of the early and significant cases in this area is
 
 Jenkins
 
 v.
 
 Moyse
 
 (254 N. Y. 319). The case involved an action to cancel and discharge of record a mortgage given by a corporation on real property transferred to it by the plaintiff, the ultimate borrower. The plaintiff .sought the relief on the ground that the mortgage was executed for a sum greatly in excess of the amount actually borrowed by the corporation.
 

 In holding that the plaintiff could not succeed in its action and in sustaining the defense that the loan was a corporate obligation and, therefore, not subject to the usury laws, Judge Lehman wrote (254 N. Y.,
 
 supra,
 
 pp. 324-325):
 
 u
 
 The test of whether this loan is usurious is whether it was in fact made to the plaintiff. Doubtless at times loans are made in fact to an individual though in form they are made to a corporation to hide the fact that the lender has exacted an illegal rate of interest from the real borrower. "We do not now deal with such a situation. Here the corporation was formed and the loan made to it, rather than to the individual who owned the corporate stock, because the parties sought to avail themselves of the rights the law accords to those who do business in corporate form under a franchise from the State. The fact that the sole owner of the stock of the corporation is an individual does not change those rights. He did not in his individual capacity borrow any money or agree to repay any money. The defendants have obtained a judgment against the corporation enforceable against property owned by the corporation at the time the action was brought. That judgment is based upon a valid contract.”
 

 Thus it is clear from
 
 Jenkins
 
 that a loan will not be struck down as usurious merely because the purpose of creating the corporation was to avoid the usury laws. Moreover, we have in subsequent cases gone even further in sustaining such loan transactions and have held that a shareholder who binds himself as guarantor or indorser of a corporate obligation will likewise not be permitted to raise the defense of usury nor will that circumstance have the effect of avoiding the transaction on the ground of usury. This rule has prevailed even where
 
 *400
 
 the corporation was a mere shell having no assets other than pledged security and where it transacted no business other than serving as a conduit for the transmission of the funds from the lender to the borrower.
 
 (Werger
 
 v.
 
 Haines Corp.,
 
 302 N. Y. 930, affg. 277 App. Div. 1108;
 
 General Phoenix Corp.
 
 v.
 
 Cabot,
 
 300 N. Y. 87;
 
 New York Credit Men’s Assn.
 
 v.
 
 Manufacturer’s Discount Corp.,
 
 298 N. Y. 512.)
 

 The real basis of these decisions has not been judicial blindness to reality but rather a response to it- — a response which has in fact been impliedly sanctioned by the Legislature.
 
 [2]
 
 Almost all of the cases in which we have sustained these loan agreements against charges of usury are cases in which the loans, though made to “dummy” corporations, were being used to further business ventures of the individuals who ultimately benefited from the transactions. Moreover, they involved circumstances, such as those present in our case, where it was, for some reason, inconvenient to merge the business venture with the corporation to whom the loan was made. Though in form the business venture and the “dummy” corporations were separate, in fact they were both part of the same enterprise, and the situation was similar to those in which a loan was made to a corporation actually transacting business. The results reached clearly conformed to the legislative policy of refusing to permit corporations — ■ even though they be close corporations — to avoid obligations on which they had become bound.
 

 Viewed in this light, the case of
 
 418 Trading Corp.
 
 v.
 
 Oconefsky
 
 (37 Misc 2d 745, affd. 19 A D 2d 593, affd. 14 N Y 2d 676), heavily relied upon by the plaintiff, does not conflict with any of the earlier decisions nor does it lend support to the plaintiff’s position.
 
 Oconefshy
 
 involved a loan made to finance the purchase of a one-family residence with title taken in the
 
 *401
 
 name of the corporation and the loan secured by a mortgage on the dwelling. The interest rate exceeded the legal rate, and the individual shareholder was permitted to attack the loan as usurious even though the corporation had been in existence for more than six months. (Of. General Obligations Law, § 5-521.)
 

 The case not only involved an area in which the Legislature had demonstrated particular concern, but the facts revealed that the lender had paid the money directly to the individual shareholder who, in turn, paid the seller of the house. The loan was made directly to the individual and never in fact passed through the corporation.
 

 In the case at bar the loan was made by a check payable to the corporation. The money was deposited in the corporate account. The corporation purchased the shares of the Leader-Burst Corporation and pledged them as security. Under these circumstances, the additional fact the guarantors repaid directly to the lender a portion of the loan would not and should not suffice to render this a loan subject to attack as usurious. (See
 
 Werger
 
 v.
 
 Haines Corp., supra.)
 

 We have examined on the merits the plaintiff’s contentions with regard to the unenforcibility of the release and find them to be without substance.
 

 The order of the Appellate Division should be affirmed, with costs.
 

 Judges Van Voorhis, Burke, Scileppi, Bergan and Breitel concur with Judge Keating ; Chief Judge Fuld taking no part.
 

 Order affirmed.
 

 [1]
 

 . The decision to grant summary judgment more than two years after the commencement of the action was a discretionary one and is not subject to review by thie court.
 

 [2]
 

 . The Legislature, in enacting former section 374 of the General Business Law (now General Obligations Law, § 5-521) which provides that a loan made to a corporation which is secured by a .mortgage on a one- or two-family house is subject to attack as usurious, unless the corporation has been in existence for more than six months, recognized that corporations were formed solely for the purpose of avoiding the usury laws to finance loans at otherwise illegal rates of interest. The failure to make provision for other situations can only be interpreted as evidencing legislative acquiescence, if not approval, of judicial decisions in this area.