Clyde SKEEN and Helen Skeen,
Appellants,

v.

GLENN JUSTICE MORTGAGE
COMPANY, INC., Appellee.

No. 18649.

Court of Civil Appeals of Texas,
Dallas.

July 22, 1975.

Rehearing Denied Aug. 19, 1975.

Steve Brutsche, Geary, Brice, Barron & Stahl, Dallas, for appellants.

Larry M. Lesh, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellee.

CLAUDE WILLIAMS, Chief Justice.

Glenn Justice Mortgage Company, Inc., as assignee of Justice Mortgage Investors, Inc., brought this action against Flan Corporation, Clyde Skeen and Helen Skeen to recover the unpaid balance of a promissory note executed by Flan Corporation and guaranteed by Clyde and Helen Skeen. The trial court sustained the motion for summary judgment by Glenn Justice Mortgage Company, Inc. and rendered judgment against Flan Corporation and Clyde and Helen Skeen, jointly and severally, in the sum of $216,718.36, together with interest and costs. From that judgment, only Clyde and Helen Skeen appeal.

We hold that one of the necessary affidavits relied upon to support the motion for summary judgment was insufficient, as a matter of law, to comply with Texas Rules of Civil Procedure, rule 166–A(e) and, therefore, reverse the judgment and remand the cause to the trial court for further proceedings.

The material facts are undisputed. Justice Mortgage Investors, Inc. loaned Flan Corporation the sum of $600,000 to purchase real estate situated in Harris County, Texas. Flan, through its president Gene Sandell, executed a promissory note which was secured by a deed of trust. The deed of trust, in usual form, created a lien in favor of Justice Mortgage Investors, Inc. on the property in Harris County, Texas. The promissory note was payable "on demand, or if no demand is made, on May 1, 1976." As further security for the payment of the note, Clyde and Helen Skeen executed a contract of guaranty in favor of Justice Mortgage Investors, Inc. This guaranty was made in consideration of the payment of $25,000 to Clyde Skeen. The note and deed of trust, as well as the guaranty agreement, were assigned to Glenn Justice Mortgage Company, Inc. Thereafter, the mortgaged property was sold at foreclosure sale by H. M. Kearby, trustee, to Glenn Justice Mortgage Company, Inc. for the stated consideration of $450,000. This action was brought to recover the deficiency owed on the note after crediting the amount received at the foreclosure sale. After Glenn Justice Mortgage Company, Inc. filed its motion for summary judgment, supported by affidavits, the Skeens filed their answer to such motion, supported by affidavits. Following a hearing the trial court sustained the motion and rendered judgment.

In their primary point of error, appellants contend that the trial court erred in granting summary judgment because the principal and supplementary affidavits by the trustee, relied upon by appellee in support of the summary judgment, fail to comply with rule 166–A(e) in that they contain conclusions of law rather than statements of fact which would be admissible in evidence upon the trial of the case. In partic-

ular, they object to the following statement in the supplementary affidavit of H. M. Kearby, trustee:

> Upon the default of Flan Corporation, Inc. in the payment of the Note, the entire unpaid balance of principal and accrued interest was declared immediately due and payable; and upon the failure and refusal of Flan Corporation, Inc. to pay the Note according to the terms and conditions thereof, I was, as trustee, requested by the owner and holder of the Note to sell the Property at public auction.

Substantially the same statement is contained in Kearby's original affidavit. No other summary-judgment evidence of default appears in this record.

Tex.R.Civ.P. 166–A(e) expressly provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

■ It is settled law that mere conclusions of law are not competent evidence and cannot support a summary judgment. The moving party must allege facts which would necessarily establish the presence of all elements of the causes of action. Through these factual allegations, the party opposing the motion is put on notice of the facts he must contradict in order to defeat the motion. Affidavits in support of a motion for summary judgment must be worded so that if the testimony were given from the witness stand during the trial it would be admissible. *Hidalgo v. Surety Savings and Loan Ass'n*, 487 S.W.2d 702, 703 (Tex.

1972); *Crain v. Davis*, 417 S.W.2d 53, 55 (Tex.1967); *Box v. Bates*, 162 Tex. 184, 346 S.W.2d 317, 319 (1961); *Fagin v. North Dallas Moving & Storage Co.*, 503 S.W.2d 308, 313 (Tex.Civ.App.—Waco 1973, no writ); *Habern v. Commonwealth National Bank*, 479 S.W.2d 99 (Tex.Civ.App.—Dallas 1972, no writ); *Hutchinson v. City of Dallas*, 290 S.W.2d 253, 257 (Tex.Civ.App.—Dallas 1956, no writ). The question is, therefore, whether the trustee's unsupported statement that "upon the default of Flan Corporation, Inc. in the payment of the Note, the entire unpaid balance of principal and accrued interest was declared immediately due and payable" was proper evidence to support the rendition of a summary judgment against appellants. We have concluded that the bare statement of "default . . . in payment" amounts to a legal conclusion on the part of the affiant and cannot support the summary judgment.

■ Black's Law Dictionary 505 (4th ed. rev. 1968) defines "default" as: "[A] failure. . . . An omission of that which ought to be done. . . . [T]he omission or failure to perform a legal duty." What was the failure or omission to perform a legal duty which would amount to "default of Flan Corporation, Inc., in the payment of the Note," as stated in the affidavit? An examination of the note, the guaranty agreement and the deed of trust reveals that there were numerous acts or omissions set out in the instruments which would give rise to a legal duty or duties which, if not performed, would constitute a "default." Several of these may be referred to as a "default . . . in payment."[1] It is quite apparent that, absent a legal default

---

1. All or any one of the following constitute occurrences which would amount to a default under the terms and conditions of the note, guaranty agreement or deed of trust: (1) Failure to pay principal on demand on or by May 1, 1976; (2) failure to pay interest on the note when same became due; (3) failure to pay all taxes prior to delinquency; (4) failure to keep all insurable premises insured; (5) failure to pay upon request by noteholder a sum equal to one-twelfth of the estimated annual ground rents, taxes, hazard insurance premiums, and special assessments next due on the mortgaged premises; (6) assignment by grantors for the benefit of their creditors; (7) adjudication of grantors as bankrupt or institution of proceedings under federal bankruptcy law; (8) any time the ownership of the mortgaged premises becomes vested in a person other than

pursuant to one or more of the possible contingencies, the appellants were not liable on their guaranty and the property could not be legally sold at foreclosure sale by the trustee. The affidavit of the trustee nowhere asserts or describes any specific act or omission that would constitute legal "default . . . in payment of the Note," or any other default specified in the note, the deed of trust or the guaranty agreement. Nowhere in the affidavit does the trustee state as a fact that the principal of the note was due. He could not do so for the simple reason that unless a demand is made, the note will not become due, according to its terms, until May 1, 1976. Nowhere in the affidavit does the trustee state as a fact that a demand was made for payment of the principal or that the interest payments on the note were not made when due. At no point in the affidavit does the trustee set forth facts which would give rise to a default and therefore acceleration as provided by any of the other provisions of the note, deed of trust or guaranty agreement, referred to in the margin. The simple statement in a trustee's affidavit that there was a "default . . . in payment of the Note" amounts to nothing more than a legal conclusion. *Tackett v. Homeowners Loan Corp.*, 286 Ky. 388, 150 S.W.2d 229, 230 (Ct. App.1941). We hold, therefore, that the principal supporting affidavit on these elements of the cause of action does not set forth competent probative evidence which would be admissible during the trial of the case. The summary judgment rendered in

reliance upon such affidavit is erroneous and must be set aside.

Since the case must be reversed and remanded to the trial court for further proceedings, we deem it advisable to discuss the remaining points of error advanced by appellants.

Appellants contend that a fact issue was presented by D. B. Smith's affidavit and supplemental affidavit in opposition to the motion for summary judgment, wherein he stated that Flan Corporation was formed by its president Sandell, at the insistence of appellee's predecessor, for the sole purpose of evading the usury statutes of the state of Texas. In his affidavit witness Smith said:

I was involved in the negotiations with Flan Corporation and Justice Mortgage Investments in connection with Justice Mortgage Investments loan to Flan Corporation. I can state of my own knowledge that Justice Mortgage Investments required Gene Sandell, now President of Flan Corporation, to incorporate and form the corporation of Flan Corporation in order to make the loan which is the subject matter of this litigation. Justice Mortgage Investments stated to Mr. Sandell that such loan could not be made without the incorporation because of the need to charge an interest rate higher than the 10% permitted under Texas law.

Tex.Rev.Civ.Stat.Ann. art. 5069–1.02 (Vernon 1971) provides that: "Except as otherwise fixed by law, the maximum

grantors; (9) discovery by noteholder that any statement, representation or warranty in the note or deed of trust or in any writings delivered to noteholder pursuant to the provisions of the deed of trust is false, misleading or erroneous in any material respect; (10) admission by grantors in writing of their inability to pay the debts generally as they become due; (11) order entered by any court appointing a receiver, trustee or liquidator of grantors or any guarantor of all or any substantial part of grantors' or guarantors' assets; (12) failure of grantors or guarantors to pay any money judgment against them at least ten days prior to the date on which the assets of grantors or any guarantor may be sold to satisfy such judg-

ment; (13) failure to have discharged within ten days after the commencement any attachment, sequestration, or similar proceedings against any of grantors' assets; (14) condemnation of a sufficient part of the mortgaged premises as to materially affect grantors' ability to perform their obligations; (15) any change in ownership of more than fifty percent of the shares issuable and outstanding of grantors; and (16) failure to maintain the loan commitment dated April 30, 1973 from Texas First Mortgage REIT to grantors in full force and effect and do all things required by such commitment in order that it might be consummated on or before May 1, 1976.

rate of interest shall be ten percent per annum." However, Tex.Rev.Civ.Stat.Ann. art. 1302–2.09 (Vernon Supp. 1974) expressly authorizes corporations to "agree to and stipulate for any rate of interest as such corporation may determine, not to exceed one and one-half percent (1½%) per month . . . under which the original principal amount is Five Thousand Dollards ($5,000) or more . . . ." Thus, pursuant to Texas law, it was perfectly legal for the original owner of the note to charge a rate of interest in excess of ten percent to Flan Corporation. The mere fact that the corporation was formed in order to obtain the loan, which is the subject matter of this litigation, does not render the transaction void or illegal. While it is true that the corporate entity may be disregarded where it is utilized as a cloak or cover for fraud or some other transaction tainted with illegality, such is not the situation in this instance. The affiant who made the affidavit in opposition to the motion for summary judgment states no facts, or even conclusions, which indicate that the corporation was created as a cloak or cover for a fraudulent or illegal transaction. As stated by the court in *Jenkins v. Moyse*, 254 N.Y. 319, 172 N.E. 521 (1930), the corporation has been created because the statute permits a corporate entity to make the contract which would be illegal if made by an individual. "The law has not been evaded but has been followed meticulously in order to accomplish a result which all parties desired and which the law does not forbid." To the same effect see *Tel Service Co. v. General Capital Corp.*, 227 So.2d 667 (Fla.1969); *Leader v. Dinkler Management Corp.*, 20 N.Y.2d 393, 283 N.Y. S.2d 281, 230 N.E.2d 120 (1967).

In opposing the motion for summary judgment, appellants filed an affidavit which stated that the property which was sold at the trustee's sale for $450,000 was actually worth well in excess of $600,000. Thus appellants now argue that this raises a fact issue as to the fairness of the sale and the adequacy of the consideration. We cannot agree. Inadequacy of consideration alone does not render a foreclosure sale void if the sale was legally and fairly made. *Tarrant Savings Ass'n v. Lucky Homes, Inc.*, 390 S.W.2d 473, 475 (Tex.1965).

Appellants also contend that since Mr. Kearby was senior vice president of Glenn Justice Mortgage Company, Inc. and was also the trustee who conveyed the property at the foreclosure sale, the sale was void because the buyer and the seller were the same persons. Again, we cannot agree with appellants. A mortgagee with power to sell may purchase at his own sale made at public auction, so long as the sale is conducted fairly and in accordance with the terms of the deed of trust. *Southern Trust & Mortgage Co. v. Daniel*, 143 Tex. 321, 184 S.W.2d 465 (1944); *Tarrant Savings Ass'n v. Lucky Homes, Inc.*, 390 S.W.2d 473, 476 (Tex.1965).

Finally appellants say that the trial court erred in holding Mrs. Skeen jointly and severally liable for the indebtedness. The contract of guaranty, executed by Mrs. Skeen, expressly limits her liability to "her interest in community property and to separate property received by her directly or indirectly from her husband, Clyde Skeen." The judgment rendered by the trial court decrees that "plaintiff, Glenn Justice Mortgage Company, Inc. do have and recover of and from the defendants, Flan Corporation, Clyde Skeen, and Helen Skeen, jointly and severally, judgment in the sum of $216,-718.36." This judgment exceeds the limits of liability contracted for in the guaranty agreement. In the event of another trial, the trial court should, within the record made, limit Mrs. Skeen's liability, if any, to that contracted for in the agreement.

The judgment is reversed, and the cause is remanded to the trial court for further proceedings.

Reversed and remanded.