Jasen, J.
The plaintiffs in this action seek to foreclose a second mortgage on defendant’s home given by the defendant Alma G. Phelps as security for her guarantee of a loan made by plaintiffs to her corporation, Mrs. Bradley G. Phelps, Inc. Defendant asserts that the transaction was usurious and the mortgage, therefore, unenforceable under section 5-501 of the General Obligations Law. Plaintiffs counter that the loan was made not to an individual but to a corporation, which by section 5-521 of the same statute is barred from interposing the defense of usury, and point out that the individual guarantor of a corporate obligation is also precluded from asserting that defense. (General Phoenix Corp. v Cabot, 300 NY 87, 95.)
The facts, as gleaned from the affidavits of the various parties, reveal that in 1971 defendant, a 75-year-old widow *240 and licensed real estate broker whose business activities were very limited and whose sole income consisted of Social Security payments, approached Harold Schneider, the husband of one of the plaintiffs, for a loan. Schneider was agreeable, provided that a corporation were organized to serve as borrower. Consequently, Mrs. Bradley G. Phelps, Inc., was formed by an attorney representing Schneider and Admiral Development Corporation. The latter, an organization in which Schneider was a principal stockholder, then made a loan of $7,000 with interest at the annual rate of 18% nominally to the Phelps corporation. The defendant personally guaranteed the corporate loan and secured her guarantee by a second mortgage on her home. Additional loans of $3,000 and $2,000 were made by Admiral in January and May, 1972, also to the Phelps corporation. All of these loans, defendant claims, were necessitated by her own personal debts and the proceeds were applied exclusively to the discharge of such debts, as Schneider knew they would be. Schneider avers, however, that the loans were made on the strength of Mrs. Phelps’ assertion that she had a "number of deals pending”.
In September, 1972, defendant, again in need of funds, obtained a personal loan in the amount of $35,000 from the Fourth Federal Savings and Loan Association of New York— $17,000 of which was used to pay off a prior first mortgage on her home held by another financing institution, and $13,000 of which was used to pay off the obligations of the Phelps corporation to Admiral Development Corporation. The Fourth Federal loan was secured by a new first mortgage on defendant’s residence, title to which remained at all times in her individual name.
Two new loans totaling $4,000 were made in 1973 by one Bernard Wain, ostensibly to the Phelps corporation but guaranteed personally by defendant and used in part, according to her affidavit, to make payments on her debt to Fourth Federal.
The Wain loans did not alleviate defendant’s financial plight and in November, 1973 a loan of $8,000—the predicate for the present action—was made by plaintiffs, again in form to the Phelps corporation, at an annual interest rate of 18%. This corporate loan was personally guaranteed by defendant and was secured by a second mortgage on her home. The proceeds of the loan, according to defendant’s affidavit, were used for the payment of her personal needs and obligations, including *241 the Wain loans. Although the papers indicate that Esther Schneider and Rose Wolf were the lenders, the defendant contends that the loan was in fact advanced by Harold Schneider.
When defendant defaulted on the first mortgage on her home, held by Fourth Federal, plaintiffs, to prevent foreclosure of that mortgage and to protect their second mortgage, made the overdue payments to the bank and, exercising their acceleration privilege under the mortgage held by them, demanded payment of the full amount of $8,068.74 by defendant. When defendant failed to pay, the present foreclosure action was instituted. In her answer, defendant pleaded three affirmative defenses, and, in an affidavit in opposition to plaintiffs’ motion for summary judgment, raised the defense of usury and requested leave to serve an amended answer alleging that defense.
The court granted plaintiffs’ motion for summary judgment and appointed a referee to compute the amount due and report on whether the property could be sold in parcels. The referee reported that the defendant owed $10,719.53, that the property was not divisible, and that sale of the whole premises "is necessary and will be most beneficial to the parties.” A subsequent motion by plaintiffs to vacate the judgment was denied. The judgment of foreclosure and the order denying the motion to vacate have been affirmed by the Appellate Division.
Whether summary judgment should have been granted depends on whether defendant had raised a triable issue of fact, the resolution of which in her favor would permit the defense of usury to be asserted. Defendant avers that Mrs. Bradley G. Phelps, Inc., was a paper corporation which never possessed any assets, bank accounts, or other indicia of corporate activity. The defendant also asserts that the proceeds of the loans were used to pay off her personal debts and obligations and were not used in furtherance of any enterprise, corporate or personal. In short, the claim is that plaintiffs’ loan was in fact made to her, though in form to the corporation. These assertions here, we believe, were sufficient to preclude the grant of summary judgment.
Our decisions have made it clear that in cases like the present one the availability of the defense of usury turns on the resolution of the ultimate question of fact—was the corporate form used to conceal a usurious loan to an individual *242 guarantor? If it was, the defense is available, provided the loan was made to discharge personal debts and obligations of the individual. (Hoffman v Nashem Motors, 20 NY2d 513, 516; 418 Trading Corp. v Oconefsky, 14 NY2d 676; Jenkins v Moyse, 254 NY 319; cf. Leader v Dinkier Mgt. Corp., 20 NY2d 393.) As Judge Lehman wrote in Jenkins v Moyse (supra, at p 324), "[t]he test of whether [a] loan is usurious is whether it was in fact made to the [individual]. Doubtless at times loans are made in fact to an individual though in form they are made to a corportion to hide the fact that the lender has exacted an illegal rate of interest from the real borrower.”
If the loan was made to a corporation, the corporation, by statute, is prohibited from asserting the defense of usury. (General Obligations Law, § 5-521.) Likewise, an individual guarantor of a corporate obligation is also precluded from asserting such a defense. (General Phoenix Corp. v Cabot, 300 NY 87, 95, supra.) But where the loan was in fact, although not in form, made to an individual guarantor to discharge his personal obligations, and not in furtherance of a corporate or personal enterprise, the individual guarantor may interpose the defense of usury. (Buoninfante v Hoffman, 48 AD2d 678; Shapiro v Weissman, 7 AD2d 752.) On the other hand, where an individual borrows money through a shell corporation to further his own business or commercial enterprise, the defense of usury is not available. (Leader v Dinkier Mgt. Corp., 20 NY2d 393, supra.)
These rules developed as a result of the prohibition against the corporate use of the usury defense. It soon became apparent that, in making loans to individuals, the usury laws could be easily avoided by the simple expedient of establishing a corporation and making the loan directly to it instead of to the ultimate individual user of the proceeds. The sole purpose of such "dummy” corporations is to serve as a paper conduit for the transmission of funds from the lender to the true borrower. Typically, such corporations would have no corporate assets and would transact no other business. There generally is no practical reason for these corporations to have any other purpose. Their function is simply to receive funds and to pass them on to the ultimate user. Through this practice, the lenders could demand usurious rates of interest from desperate and unsophisticated borrowers cloaked with a corporate veil. If form were to control, the creation of a corporation would, for all practical purposes, result in a *243 waiver of the right to assert the usury defense. The salutory commercial purpose of the corporation exemption would be a shield for the loan shark.
It should be stated, however, that there is no difficulty in sanctioning the use of a shell corporation to avoid the usury laws provided that the true borrower has a business purpose and the corporation itself is a financing device in furtherance of the profit-oriented enterprise. Indeed, many subsequently thriving commercial enterprises start out with a bare corporate cupboard. The basic foundation of our economy rests on the system of free enterprise, and persons seeking to obtain financing, frequently by resort to paper corporate intermediaries, for business enterprises should expect to pay the market rate for the investment capital that they require. On the other hand, lenders are entitled, if they can, without sham transactions, to obtain the highest rate of interest for their money, (Cf. Jenkins v Moyse, 254 NY 319, 323, supra.) So long as the borrower is aware of the potential risk and acts in the belief that the ultimate profit justifies the risk undertaken, the free market in money operates without friction and there is no need for legislative or judicial interference. If the venture falls through or if the profits do not reach anticipated levels, the businessman will not be relieved from the consequences of his bad bargain, just as the courts will not relieve a promisor from the obligations of an improvident contract.
The difficulty arises when a corporation is organized, not in furtherance of any corporate or personal enterprise, but to strip from an impoverished debtor the benefits of the usury laws. The purpose of usury laws, from time immemorial, has been to protect desperately poor people from the consequences of their own desperation. Law-making authorities in almost all civilizations have recognized that the crush of financial burdens causes people to agree to almost any conditions of the lender and to consent to even the most improvident loans. Lenders, with the money, have all the leverage; borrowers, in dire need of money, have none. In recognizing this problem, the courts have drawn a delicate balance by both enforcing legitimate business obligations and by protecting impoverished debtors from improvident transactions drawn by lenders and brought on by dire personal financial stress.
Turning to the case before us, it will be pertinent, at trial, to show the understanding of the parties with respect to the purpose of the loan and the uses to which the proceeds were *244 to be put—whether to pay personal obligations of the individual or to finance a profit-motivated enterprise. In this connection, the purpose of each of the series of loans should be explored to ascertain whether any or all of the loans were intended to further a profit-making enterprise. On the other hand, it would be most relevant to discover whether the original loans were personal in nature for it may be that the subsequent and predicate loan arose out of an inability to pay the earlier personal loans.
It will also be material to establish the expected source of funds for repayment of the indebtedness; whether from anticipated profits or from the personal resources of the individual (which appear to be limited to defendant’s Social Security benefits). It should be obvious that the precise legal form of the loan will not be determinative of the ultimate question of fact—whether the loan was made to the individual for personal purposes or in furtherance of a profit-making corporate or personal enterprise.
Since the availability of the defense of usury will be dependent on the factual issues discussed above, the defendant should be permitted to serve an amended answer alleging that defense. A proper disposition of the case can be made only after opportunity has been afforded both parties at trial to develop proof relevant to the critical factual issue as to the identity of the real borrower. Summary judgment should have been denied in view of unresolved factual disputes central to the nature of the loan. (E.g., Pincus v W B. Assoc., 54 AD2d 755; Buoninfante v Hoffman, 48 AD2d 678, supra; North Broadway Funding Corp. v Freed, 45 AD2d 759; Shapiro v Weissman, 7 AD2d 752, supra.)
The order of the Appellate Division which affirmed the grant of summary judgment should be reversed, the motion for summary judgment denied, and the defendant granted leave to serve an amended answer within 20 days to include a defense of usury. The appeal from the order of the Appellate Division which affirmed the denial of the motion to vacate and renew should be dismissed on the ground that the order does not finally determine the action within the meaning of the Constitution and, in any event, involves an exercise of discretion of a type not reviewable by the Court of Appeals.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
*245 Order which affirmed the grant of summary judgment reversed, with costs to abide the event, motion for summary judgment denied and defendant granted leave to serve, within 20 days, an amended answer to include a defense of usury. Appeal from the order which affirmed the denial of defendant's motion to vacate and renew dismissed, without costs.