Frank HUTCHISON

v.

COMMERCIAL TRADING CO., INC.

Civ. A. No. 3–6359–E.

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 31, 1977.

Donald W. Keck, Dallas, Tex., for plaintiff.

Joel W. Cook, Houston, Tex., Franklin H. Perry, Dallas, Tex., for defendant.

## MEMORANDUM AND ORDER OF DISMISSAL

MAHON, District Judge.

The above-referenced cause of action was originally filed on 5 October 1972, at a time when this Court was sitting in the Dallas Division of the Northern District of Texas. On November 1972, Defendant filed a motion to dismiss for lack of personal jurisdiction over Defendant and for failure to state a claim upon which relief could be granted. A hearing was set on Defendant's motion to dismiss on 7 December 1972, at which time Defendant's motion was carried along. Subsequently, Defendant answered and discovery proceeded. On 26 July 1973, the Court entered an Order setting schedule for discovery, briefing, and ruling on the motion to dismiss. On 14 May 1975, the Court ordered that Defendant's motion be in all respects denied.

Defendant, sure of its position, filed a "Motion for Rehearing, or, in the Alternative, to Certify Questions Under 28 U.S.C. § 1292(b)" and a request for findings of fact and conclusions of law. On 13 June 1975, the Court ordered that Defendant's motion for rehearing be carried along.

On 16 December 1975, the Court held a hearing on Defendant's motion for rehearing. Following the 16 December 1976 hearing, and up to 9 December 1976, both parties have filed letter briefs updating their respective arguments for their positions.

Having carefully reconsidered all of the pleadings, briefs, and arguments of both parties, the Court is now of the opinion that Defendant's motions for rehearing and to dismiss for failure to state a claim should be granted.

## I.

### PLEADINGS AND CAUSE OF ACTION

Plaintiff pleads that, on 26 November 1968, a second lien promissory note was signed on behalf of Beckwood, Inc., as maker by Arthur W. Beck, Jr., president of Beckwood, Inc., in favor of Defendant, providing for interest to be paid at the rate of $1^{11}/_{48}\%$ per month. This note was unconditionally personally guaranteed by Arthur W. Beck, Jr., and his wife, and secured by a second lien deed of trust on property personally owned by Arthur W. Beck, Jr., located in Tarrant County, Texas. Plaintiff further claims that this note was "in renewal, rearrangement, and extension" of two earlier promissory notes (30 January 1968 and 22 November 1968), both executed by Arthur W. Beck, Jr., on behalf of Beckwood, Inc., both unconditionally guaranteed by Arthur W. Beck, Jr., and his wife, and both made payable to R. Blair Rugh.

Plaintiff claims that he will show that all sums here in dispute were loaned by Defendant to Arthur W. Beck, Jr., only if such sums were first funded by R. Blair Rugh, if a Beck corporation were the payor and maker of the note, if the note were guaranteed by Mr. and Mrs. Beck, and if the note provided for further security in the form of a deed of trust on real estate owned by Arthur W. Beck, Jr., individually. Plaintiff contends that this alleged arrangement was a requirement, scheme, and disguise on the part of Defendant to avoid Texas's maximum 10% per annum interest laws on loans to individuals by conditioning the note on the naming of a corporation as the maker.

Plaintiff further claims that he will show that Arthur W. Beck, Jr., was the alter-ego of Beckwood, Inc., at the time the note was

signed.[1] Plaintiff contends, therefore, that the loans in question were actually loans to an individual at an interest rate greater than 10% in violation of Tex.Civ.Stat.Ann. art. 5069–1.02.

The notes in question were paid in part by Mr. Beck, until Plaintiff came into possession of certain property of Mr. Beck's and was assigned all rights of Mr. Beck with regard to the contracts in question. Plaintiff has subsequently paid in full the remainder due on the notes.

## II.

## PERSONAL JURISDICTION

The Court remains of the opinion that there can be no doubt of personal jurisdiction over Defendant under the Texas long-arm statute, Tex.Rev.Civ.Stat.Ann. art. 2031b.

■ Even accepting Defendant's position that it has no officers, agents, or contact with the State of Texas other than its investigation leading up to the "acquisition" of the loans in question, and possible other loan transactions not related to this lawsuit, it is evident that this Court has jurisdiction over Defendant. Defendant has assumed a loan contract with a Texas corporation and a Texas individual. Repayment of the loan was anticipated to take place from the State of Texas. The note was secured by property located in the State of Texas. It is patently obvious that maintenance of a usury action in the State of Texas does not offend the "traditional notions of fair play and substantial justice" that limit the reach of long-arm statutes such as that of Texas's. *See International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974). *Cf. Arthur, Ross & Peters v. Housing, Inc.*, 508

F.2d 562 (5th Cir. 1975); the opinion of this Court in *Frito-Lay Inc. v. Proctor & Gamble Co.*, 364 F.Supp. 243 (N.D.Tex.1974).

Defendant must have foreseen that, if payments on the lien were not made, it would have to utilize the laws of the State of Texas to enforce payment or to foreclose on Texas real property. Moreover, the Court finds from deposition that Defendant was engaged in a course of business with Arthur W. Beck, Jr., and that R. Blair Rugh was, for the sake of the transactions now before the Court, actually Defendant's agent.

Accordingly, the Court concludes: (1) that Defendant has had more than minimal contacts with the State of Texas, resulting from Defendant's own affirmative acts; and (2) that it is fair and reasonable to require Defendant to come into the State of Texas to defend this action.

## III.

## TEXAS USURY LAW

Assuming for the sake of Defendant's motion to dismiss that Plaintiff's pleadings and allegations are true, the Court is nevertheless of the opinion that Plaintiff has failed to state a claim upon which relief can be granted.

In the present case, Plaintiff does not contend that Beckwood, Inc., was not an ongoing corporation at the time the loan in question was consummated. Nor does Plaintiff contend that Beckwood, Inc., was created for the purpose of avoiding the Texas usury laws. There is no question that Beckwood, Inc., was legally and properly incorporated under the laws of the State of Texas. Plaintiff does contend, however, that Beckwood, Inc., was the alter-ego of Arthur W. Beck, Jr., that it was used for his personal purposes, and that corporate and personal funds were continually intermixed.

---

**1.** Indeed, Plaintiff claims that an order of alter-ego was entered by the Referee in Bankruptcy in Bankruptcy No. BK 3–1995, *The Matter of* *Arthur W. Beck, Jr., and Wife*, in the United States District Court for the Northern District of Texas, Dallas Division.

The rate of interest generally applicable on loans to individuals is governed by Tex. Rev.Civ.Stat.Ann. art. 5069–1.02, which provides:

> Except as otherwise fixed by law, the maximum rate of interest shall be ten per cent per annum. A greater rate of interest than ten per cent per annum unless otherwise authorized by law shall be deemed usurious. All contracts for usury are contrary to public policy and shall be subject to the appropriate penalties prescribed in Article 1.06 of this Subtitle.[2]

But under Tex.Rev.Civ.Stat.Ann. art. 1302–2.09, corporations may "stipulate for any rate of interest as such corporation may determine, not to exceed one and one-half percent (1½%) per month, on any bond, note, debt, contract or other obligation of such corporation" of $5000 or more. "[I]n such instances, the claim of usury by such corporation, its successors, guarantors, assigns or anyone on its behalf is prohibited."

Plaintiff's contention is that Article 1302–2.09 has application only to "bona fide loans" to corporations. Where, however, an individual applies for a loan, and the lender merely uses the corporate structure as a devise, scheme, or technique to evade the interest limits set by Article 5069–1.02, Plaintiff's position is that the resulting higher-interest loan is not a "bona fide corporate loan," but is rather a loan to an individual in excess of the interest limit set in Article 5069–1.02.

Defendant's position is that any loan to a corporation falls under Article 1302–2.09, regardless of the intentions of the parties to the contract with regard to the eventual use to which the money would be put.

The question now squarely before the Court is which Article, 5069–1.02 or 1302–2.09, applies in a situation where a lender is willing to make a loan to an individual only if the individual accepts a higher interest rate than that allowed under Article 5069–1.02 and uses a corporation to avoid the usury laws of the State of Texas.

Since this case is founded on diversity jurisdiction, 28 U.S.C. § 1332, this Court must decide the present case as would a court of the State of Texas. *Guaranty Trust Co. v. York*, 326 U.S. 99, 108–109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Unfortunately, there is only one Texas case on point, and its holding is not entirely conclusive.

In *Skeen v. Glenn Justice Mtg. Co.*, 526 S.W.2d 252 (Tex.Civ.App.—Dallas 1975, no writ), a mortgage company sued the individual guarantors to a note, the maker of which was a corporation. The defendants there contended, after a grant of summary judgment in favor of the mortgage company, that the obligor corporation was formed at the lender's insistence for the sole purpose of circumventing the Texas usury law, and that the loan should therefore be considered usurious. While reversing and remanding on other grounds, the *Skeen* Court held that incorporation for the sole purpose of circumventing Texas usury laws does not render a loan transaction usurious. Choosing to follow the New York solution to this problem, as opposed to conflicting decisions from other states, the *Skeen* Court stated:

> The mere fact that the corporation was formed in order to obtain the loan · . . . does not render the transaction void or illegal. While it is true that the corporate entity may be disregarded where it is used as a cloak or cover for fraud or some other transaction tainted with illegality, such is not the situation in this instance. . . . [T]he corporation has been created because the statute permits the corporate entity to make the contract which would be illegal if made by an individual. "The law has not been evaded, but has been followed meticulously in order to accomplish a result which all parties desired and which the law does not forbid."

526 S.W.2d at 256.

The uncertainty in the holding of this case lies in the dictum that if sufficient

---

2. Tex.Rev.Civ.Stat.Ann. art. 5069–1.06 provides for recovery of twice the amount of interest contracted for, plus attorney's fees.

facts establishing fraud or some other transaction tainted with illegality had been shown, the corporate entity would have been disregarded. As noted in a student commentary on the *Skeen* case:

> This dictum is disturbing because it seems to follow a line of Texas cases which have held that courts would look beneath the surface of a contract and "if from all the facts its essence is found to be the receiving or contracting for a greater rate of interest than is allowed by law, the statutory consequences must be visited upon it." In the past Texas courts have also held that a contract valid on its face could not be used to avoid the usury laws, and have pierced the corporate veil where a corporation appeared to have no real separate existence from it shareholders.

Note, 29 Southwestern L.J. 959, 963 (1975) (footnotes omitted).

The student commentary goes on to conclude, however, that the *Skeen* decision is not inconsistent with the New York rule. This Court agrees.

Estoppel is an essential element in the *Skeen* decision. If, on the other hand, a lender utilized his superior bargaining position to require an inexperienced borrower to incorporate for a loan known to be personal *and* necessitous, Texas courts would likely ignore the corporate form and find usury. *See In re Greenberg*, 21 N.J. 213, 121 A.2d 520 (1956); Note, *supra*, 29 Southwestern L.J. at 964.

■ It is, nevertheless, clear that Texas courts have tacitly approved incorporation as a lender's requirement for a loan. The borrower must establish fraud or illegality in order to avoid the transaction. This result is in line with the recommendations of commentators on the question. *See* Loiseaux, *Usury Problems in Commercial Lending*, 49 Texas L.Rev. 419 (1971); Comment, 28 Southwestern L.J. 437, 448–451

(1974); Note, *supra*, 29 Southwestern L.J. 959.

■ There are several reasons why the Court is of the opinion that Plaintiff's allegations in the present case fail to state a claim under Texas law.[3] In the first place, the corporate obligor involved herein was not created for the purpose of evading the Texas usury laws. It is uncontested that Beckwood, Inc., was legally and properly incorporated under the laws of the State of Texas and transacted business in Texas prior to any negotiations for the loans in question. This Court, in light of the *Skeen* decision, does not believe that a Texas court would ignore the corporate form in the context of a loan involving an already existing corporation. To do so would inject far too much uncertainty into commercial loan transactions. *See* Comment, *supra*, 28 Southwestern L.J. at 451. Additionally, the use of an ongoing corporation is much more susceptible to the defense of estoppel than is the use of a newly created corporation. The ongoing corporation indicates a more sophisticated borrower who is familiar with using the corporate form to achieve his business or personal goals. Indeed, in the present case, Plaintiff has alleged that Beckwood, Inc., was consistently used as the alter-ego of Arthur E. Beck, Jr. There is no allegation that Mr. Beck was inexperienced in the business world or at borrowing money. All indications from Plaintiff's pleadings are to the contrary. *See Baske v. Russell*, 67 Wash.2d 268, 407 P.2d 434, 437 (1965); *Telephone Service Co. v. General Capital Corp.*, 227 So.2d 667 (Fla.1969); *Leader v. Dinkler Mgt. Corp.*, 20 N.Y.2d 393, 283 N.Y.S.2d 281, 230 N.E.2d 120 (1967); *Hoffman v. Lee Nashem Motors*, 20 N.Y.2d 513, 285 N.Y.S.2d 68, 231 N.E.2d 765 (1967); *Gelber v. Kugel's Tavern, Inc.*, 10 N.J. 191, 89 A.2d 654 (1952); *In re Greenberg*, *supra*, 121 A.2d 520; *Lesser v. Strubbe*, 56 N.J.Super. 274, 152 A.2d 409 (1959), *modified on other grounds*, 67 N.J. Super. 537, 171 A.2d 114 (1961), *aff'd per*

---

**3.** The following discussion involves facts that are well-established by Plaintiff's pleadings. In addition, these facts are proven up by interrogatories, deposition, and affidavit. If such additional proof of facts is thought necessary, this Order of Dismissal should be construed as an Order of Summary Judgment. Federal Rules of Civil Procedure, Rule 12(c).

*curiam*, 39 N.J. 90, 187 A.2d 705 (1973); *Dahmes v. Industrial Credit Co.*, 261 Minn. 26, 110 N.W.2d 484 (1961); *Country Motors v. Friendly Finance Corp.*, 13 Wis.2d 475, 109 N.W.2d 137 (1961).

 Additionally, Plaintiff has not alleged any fraud or other illegal transaction as required by the *Skeen* decision. All Plaintiff has alleged is that the use of the corporate form itself was fraud; he does not indicate against whom this fraud was perpetrated. Mr. Beck acted in concert with Defendant in effecting the corporate loans involved herein. It is patent that the mere use of the corporate form is not the sort of fraud or illegality of which the *Skeen* Court was speaking. Were this Court to hold otherwise, it would be rendering the *Skeen* decision meaningless.

Finally, this Court's conclusions are supported by the recent decision of the Texas Supreme Court in *Universal Metals & Machinery, Inc. v. Bohart*, 539 S.W.2d 874 (Tex.1976). In *Bohart*, the Court ruled that Article 1302–2.09 prohibits the claim or defense of usury by individual guarantors of a corporate loan made in accordance with that section, despite the fact that the signature of the corporate representative was forged. The Court pointed out that the prohibition of Article 1302–2.09 extended to guarantors of all kinds. Though the *Bohart* case is not directly in point, since no one in that case was advocating the same theory of usury that Plaintiff asserts in the present action, *Bohart* clearly demonstrates the Texas Supreme Court's concern for certainty in commercial loan transactions in the face of usury allegations.

### IV.

### ORDER

Accordingly, the Court ORDERS that Defendant's "Motion to Dismiss" and "Motion for Rehearing" be denied to the extent that they assert lack of personal jurisdiction. The Court further ORDERS that Defendant's "Motion to Dismiss" and "Motion for Rehearing" be granted to the extent that they urge that Plaintiff has failed to state a claim upon which relief can be granted.

The Court, therefore, ORDERS that the above-referenced cause of action be hereby, in all respects, dismissed. Defendant shall recover of Plaintiff his costs of action.